IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. _____

Cypress Advisors, Inc., a Florida corporation,
d/b/a The Cypress Group,

       Plaintiff,

v.

Kent McCarty Davis, North Carolina citizen,
a/k/a Carty Davis
d/b/a Cypress International, Inc.

       Defendant.

## COMPLAINT FOR DECLARATORY JUDGMENT

Cypress Advisors, Inc., d/b/a The Cypress Group ("The Cypress Group"), through its attorneys, Faegre Baker Daniels LLP, for its complaint against Kent McCarty Davis ("Davis"), alleges as follows:

### THE PARTIES, JURISDICTION AND VENUE

1.      This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201. This action seeks to determine a question of actual controversy between The Cypress Group and Davis.

2.      The Cypress Group is a Florida corporation that is authorized to do business in the State of Colorado. The Cypress Group maintains its principal place of business in Colorado.

3.      Davis is an individual that is a resident of North Carolina. Davis is also known as Carty Davis. Davis has also done business under the name "Cypress International, Inc." Upon

information and belief, Davis organized a Georgia corporation named "Cypress International, Inc." in 2001, however such corporation was administratively dissolved in 2005 and has not been reinstated.

4. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a)(1). There is complete diversity of citizenship between Cypress Group and Davis. The amount in controversy exceeds $75,000, exclusive of interest and costs.

5. This Court has personal jurisdiction over Davis because, *inter alia*, Davis transacts business in Colorado and has substantial contacts with Colorado.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred in this district and a substantial part of the property that is the subject of this action is situated in Colorado.

## FACTUAL ALLEGATIONS

### *The Cypress Group*

7. The Cypress Group specializes in providing specialized financial advisory services to the restaurant and franchise industry.

8. The Cypress Group was founded by Dean Zuccarello ("Zuccarello") 25 years ago in 1991 as a Florida corporation. Zuccarello is a Colorado resident.

9. In 1995, The Cypress Group filed its application for authority to conduct transact business in Colorado. The Cypress Group has been transacting business in Colorado every year for the past 20 years.

10. Zuccarello has been the sole shareholder of The Cypress Group since its inception a quarter century ago.

11. Zuccarello has served as the sole officer and director of The Cypress Group since its inception a quarter century ago.

12. The Cypress Group has maintained its principal office in Colorado for the past 20 years.

13. The Cypress Group currently maintains its principal office at 323 Paragon Way, Castle Rock, CO 80108. The main telephone number for the Cypress Group is a Colorado phone number: (303) 680-4141. The Cypress Groups' records and client engagement agreements are located in The Cypress Group's Colorado office.

14. Over the past 25 years, Zuccarello has led and built the Cypress Group to become one of the most effective, well known, and well respected restaurant and franchise financial advisory firms in the United States. In 2016, The Cypress Group was recognized as one of 12 "Dealmakers of the Year" by the Franchise Times, a prestigious industry award The Cypress Group has won three of the past four years. Today, The Cypress Group provides clients with sophisticated, experienced and specialized support in the following areas: Mergers and Acquisitions, Capital Formation, Valuation and Fairness Opinions, Restructuring and Bankruptcy, and Strategic Advisory Services.

15. Since its inception, The Cypress Group has provided its services to its clients through its written engagement agreements. Such engagement agreements:

    a. are between <u>The Cypress Group</u> and the client(s);

    b. typically provide for The Cypress Group to be the client's "exclusive" financial advisory firm for a certain term;

    c. provide for payment of retainers and success fees to The Cypress Group in Colorado;

    d. provide (i) that "any advice or information provided to the [client] by Cypress pursuant to the engagement agreement is confidential and may not be disclosed to any other party without the consent of Cypress"; and (ii) that "the [client] will continuously advise Cypress with respect to any material developments or matters that occur or come to their attention during the term of Cypress's engagement"; and

    e. are typically governed by Colorado law and provide for any disputes arising between The Cypress Group and the client(s) to be arbitrated in Colorado.

16. Since its inception, The Cypress Group has performed the services for its clients through its relationships and alliances with a group of independent contractors ("Contractors") that have the financial advisory skills necessary to develop and complete The Cypress Group's clients' transactions. Such Contractors are compensated as independent contractors and such Contractors do not have any ownership in The Cypress Group.

*Carty Davis*

17. Davis is one of the several Contractors with whom The Cypress Group has worked over the years to perform the services and duties required of The Cypress Group under its engagement agreements with The Cypress Group's clients.

18. Although there are no written agreements between Davis and The Cypress Group regarding the Contractor services Davis provided to the Cypress Group, The Cypress Group paid Davis for his Contractor services and Davis accepted such payments for his Contractor services.

The Cypress Group annually provided Davis with an IRS Form 1099 for the amounts paid to David for his Contractor services.

19. Although there are no written agreements between Davis and The Cypress Group, and although Davis retained the independence to and did maintain and conduct other business separate and apart from services provided to The Cypress Group, the parties nevertheless agreed that any financial advisory services to be provided to restaurant and franchise industry clients would be solicited under the name of and formally engaged by The Cypress Group (the "Solicitation and Engagement Agreement").

20. During the time Davis worked with The Cypress Group as a Contractor, Davis routinely transacted business in Colorado in connection with his dealings with The Cypress Group and in connection with his performance of duties as a Contractor for The Cypress Group. For example:

   a. Davis engaged in a business relationship with The Cypress Group, fully aware that The Cypress Group's principal place of business is in Colorado.

   b. Davis regularly and routinely sent emails and made phone calls to the Cypress Group's Colorado-based CEO, Zuccarello, and other Colorado-based Cypress Contractors regarding the Cypress Group's engagements with clients, Davis's services as a Contractor in supporting such Cypress Group engagements, and Davis's business relationship with The Cypress Group.

   c. Davis routinely and regularly utilized The Cypress Group's phone system where he had a dedicated phone number with a Colorado area code: (303) 680-4141 ext. 102.

    d. Davis traveled to Colorado on several occasions to meet with Zuccarello and other Cypress Contractors to discuss The Cypress Group's engagements and to discuss business issues arising from the business relationship between The Cypress Group and Davis.

    e. The Cypress Group's engagements that Davis provided support to as a Contractor were contracts governed by Colorado law.

    f. Although Davis lacked authority to execute engagement agreements on behalf of The Cypress Group, Davis executed at least one engagement agreement with a client purportedly on behalf of The Cypress Group that is governed by Colorado law and provides for arbitration of any disputes between The Cypress Group and the client in Colorado.

*The Controversy Between The Cypress Group and Davis*

21. On June 18, 2016, Davis advised The Cypress Group's founder and CEO that he intended to terminate his relationship with The Cypress Group as of June 30, 2016 (the "Termination Date").

22. As of June 30, 2016, Davis became a direct competitor of The Cypress Group.

23. When he announced his intentions to terminate the relationship, Davis requested that The Cypress Group assign certain of The Cypress Group's engagements to Davis and pay Davis yet-uncollected fees from certain of The Cypress Group's engagements.

24. After Davis announced his intentions to terminate the relationship, The Cypress Group discovered that Davis breached the Solicitation and Engagement Agreement by separately

and secretly soliciting and engaging at least one restaurant industry client for financial advisory services as he prepared to terminate his relationship with The Cypress Group.

25. At the time Davis advised The Cypress Group of his intention to terminate his relationship with The Cypress Group, Davis was performing Contractor services for The Cypress Group on certain of The Cypress Group's active engagements (the "Highlighted Cypress Engagements"). One such engagement is The Cypress Group's exclusive financial advisory engagement with ZAK, LLC (the "Cypress/ZAK Engagement"). The Cypress Group anticipates that the fees it will earn from its exclusive financial advisory services on the Cypress/Zak Engagement alone will exceed $75,000.

26. On July 11, 2016, The Cypress Group sent Davis a letter confirming that the parties' relationship was terminated as of June 30, 2016, and declining Davis's unsupported and unwarranted request for assignment of The Cypress Group's engagements or payment of fees paid to The Cypress Group after the Termination Date (the "Confirming Letter"). A copy of the Confirming Letter is attached as Exhibit 1.

27. In the Confirming Letter, The Cypress Group also confirmed the termination of the parties' relationship for cause given that (1) Davis had acted in bad faith and breached the Solicitation and Engagement Agreement by failing to disclose other financial advisory engagements with other restaurant clients that he solicited and hid from The Cypress Group (as he prepared to terminate his relationship with and become a direct competitor of The Cypress Group) (the "Undisclosed Engagements"), (2) Davis's other acts of bad faith in dealing with The Cypress Group, and (3) Davis's inappropriate conduct with The Cypress Group's clients and other Contractors.

28. The Cypress Group's Confirming Letter also demanded that, given the termination of Davis's relationship with The Cypress Group, Davis:

   a. Stop work on any current Cypress Group engagement;

   b. Cease any communications of any kind with any present or contemplated Cypress Group client;

   c. Return all Cypress Group documents, client lists, data, and other confidential information to The Cypress Group.

29. To date, and despite the termination of his relationship with The Cypress Group, Davis has failed and refused to stop working on The Cypress Group's exclusive engagements. Davis continues to communicate with The Cypress Group's clients and intentionally interfere with the Cypress Group's exclusive engagements. For example, despite the termination of the his relationship with The Cypress Group as of June 30, 2016, Davis has continued to be in active (if not daily) email communication with the client representatives on the Cypress/ZAK Engagement throughout the month of July 2016.

30. In addition, on July 26, 2016, Davis's counsel sent a letter to counsel for ZAK, tacitly alleging that Davis is a party to The Cypress Group's engagement agreement with ZAK and affirmatively disputing (a) that The Cypress Group has sole rights to The Cypress Group's engagement with ZAK, and (b) that the engagement agreement does not prohibit ZAK from engaging Davis as an additional consultant for the Cypress/Zak Engagement (the "Davis Letter"). A redacted copy of the Davis Letter without attachments is attached as Exhibit 2.

31. Davis's continued communications to ZAK and the Highlighted Cypress Engagements are interfering with and causing damages to The Cypress Group's relationship, reputation, and contractual relations and duties with its valuable clients.

32. Despite requests by The Cypress Group to Davis to disclose all of his separate (*i.e.* outside of The Cypress Group) solicitations and engagements of restaurant and franchise industry clients pursuant to the Solicitation and Engagement Agreement, Davis has failed and refused to make any disclosures of his Undisclosed Engagements.

33. Davis provided services to The Cypress Group as an independent contractor.

34. The relationship between Davis and the Cypress Group terminated on June 30, 2016.

35. The Solicitation and Engagement Agreement described herein is a valid and enforceable contract.

36. The Cypress Group has all right, title and interest in The Cypress Group's engagement agreements with its clients.

37. Davis is not a party to The Cypress Group's engagement agreement with ZAK or the other Highlighted Cypress Engagements.

38. Davis is not entitled to any fees collected by The Cypress Group after June 30, 2016, on any engagement of The Cypress Group.

39. Any continued work by Davis on The Cypress Group's exclusive engagements and/or any communications by Davis with The Cypress Group's clients on such exclusive engagements would constitute tortious interference with The Cypress Group's contractual relationship with its clients.

**FIRST CLAIM FOR RELIEF – DECLARATORY JUDGMENT**

40. The foregoing paragraphs are incorporated herein by reference.

41. Under Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq*. and Fed. R. Civ. P. 57, this Court may declare the respective rights, duties and other legal relations of the parties. As described above, an actual and justiciable controversy exists between The Cypress Group and Davis with respect to their independent contractor relationship and their rights and obligations under the Solicitation and Engagement Agreement, the Undisclosed Engagements, the Highlighted Cypress Engagements, and all other engagements of The Cypress Group. The Cypress Group therefore requests the entry of a judgment declaring that:

   a. Davis provided services to The Cypress Group as an independent contractor;

   b. The relationship between Davis and the Cypress Group terminated on June 30, 2016;

   c. The Solicitation and Engagement Agreement described herein is a valid and enforceable contract;

   d. The Cypress Group has all right, title and interest in The Cypress Group's engagement agreements with its clients;

   e. Davis is not a party to The Cypress Group's engagement agreement with ZAK or the other Highlighted Cypress Engagements;

   f. Davis is not entitled to any fees collected by The Cypress Group after June 30, 2016, on any engagement of The Cypress Group; and

   g. Any continued work by Davis on The Cypress Group's exclusive engagements and/or any communications by Davis with The Cypress Group's

clients on such exclusive engagements would constitute tortious interference with The Cypress Group's contractual relationship with its clients.

## **PRAYER FOR RELIEF**

WHEREFORE, pursuant to 28 U.S.C. § 2201, The Cypress Group demands judgment in its favor and against Davis:

(a) making the declarations set forth above;

(b) awarding costs of this action; and

(c) awarding such other and further relief as this Court may deem just and proper.

Respectfully submitted this 29th day of July, 2016.

        FAEGRE BAKER DANIELS LLP

        */s/ Bradford E. Dempsey*
        Bradford E. Dempsey
        3200 Wells Fargo Center
        1700 Lincoln St.
        Telephone: (303) 607-3675
        Facsimile: (303) 607-3600
        Brad.Dempsey@FaergeBD.com

        *Attorneys for The Cypress Group*

Plaintiffs' Address:

323 Paragon Way
Castle Rock, CO  80108