# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Chief Judge Marcia S. Krieger

Civil Action No. 16-cv-01935-MSK-MEH

**CYPRESS ADVISORS, INC.,**

     **Plaintiff**

**v.**

**KENT MCCARTY DAVIS,**

     **Defendant,**

**and**

**KENT MCCARTY DAVIS,**

     **Counterclaim Plaintiff/Third-Party Plaintiff**

**v.**

**CYPRESS ADVISORS, INC., and**
**DEAN B. ZUCCARELLO, a Colorado citizen,**

     **Counterclaim and Third-Party Defendants.**

---

## OPINION AND ORDER RE: MOTIONS FOR SUMMARY JUDGMENT

---

**THIS MATTER** comes before the Court pursuant to Cypress Advisor's ("Cypress") Motion for Summary Judgment (**# 141, 142, 144, 145**) on the counterclaims asserted against it by Mr. Davis, Mr. Davis' response (**# 152, 153**), and Cypress' reply (**# 158, 159**); and Mr. Davis' Motion for Summary Judgment (**# 143**) on certain claims against him by Cypress, Cypress' response (**# 150, 151**), and Mr. Davis' reply (**# 155, 156**). Also pending are several motions to restrict public access (**#148, #149, #154, #157, #160, #161**) to the parties' various summary judgment filings.

1

## I.      Jurisdictional Statement

The Court exercises diversity jurisdiction in this matter pursuant to 28 U.S.C. § 1332.

## II.      Relevant Factual Background

The Court summarizes the pertinent facts herein, and elaborates as necessary in its analysis.

Mr. Zuccarello owns Cypress, a business that provides financial advisory services to clients involved in purchasing and operating restaurant franchises.  In 2000, Mr. Zuaccarello invited Mr. Davis to join the business, although there is some dispute between the parties as to precisely what form that joinder took.  There is also some dispute between the parties about their precise agreement regarding Mr. Davis' compensation, but it is sufficient to observe at this point that, for most years until 2010, the general practice appears to be that each individual earned at least 25% of the revenues associated with any deal, regardless of how the work was initiated or performed, with the remaining amount allocated based on various factors.[1]

In early 2011, Mr. Zuccarello notified Mr. Davis that he perceived "a significant disparity in the income generation on the deals we worked on independently" – that is, that Mr. Zuccarello believed he was generating substantially more revenue for Cypress than Mr. Davis was.  At that same time, Cypress was allocating less than a 25% share of revenues from Mr. Zuccarello's deals to Mr. Davis.  Mr. Zuccarello suggested that they "find an equitable solution to the imbalance in revenue sharing". Over several years, the parties engaged in periodic discussions about future revenue splits, but failed to reach a firm agreement.

---

[1]      From 2000 to 2005, a third person was employed at Cypress and shared in certain revenue distributions, but for purposes of simplification here, the Court will ignore his existence.

In 2016, Mr. Davis left Cypress, formed his own competing business, and began soliciting and performing some services for clients that Mr. Davis knew had contractual agreements to deal exclusively with Cypress. Cypress alleges that such solicitations are improper in various respects as discussed herein. Several lawsuits, including the instant one, ensued.

In its Amended Complaint (**# 28**), Cypress asserts the following claims against Mr. Davis: (i) a request for a declaratory judgment addressing several topics, including the nature of Mr. Davis' involvement with Cypress, whether Mr. Davis is a party to certain agreements that Cypress has with certain clients, and whether Mr. Davis is entitled to fees earned by Cypress after his departure; (ii) misappropriation of trade secrets in violation of Colorado's Uniform Trade Secrets Act ("CUTSA"), C.R.S. § 7-74-101 *et seq.*, in that since Mr. Davis' departure from Cypress, Mr. Davis has improperly used Cypress' trade secret information to solicit and perform services for Cypress' clients; (iii) a claim of unspecified provenance, captioned as "Civil Theft of Trade Secrets," that appears to be duplicative of Cypress' CUTSA claim; (iv) a claim for civil theft under C.R.S. § 18-4-401 *et seq.*, in that Mr. Davis intercepted and cashed a check from a client, payable to Cypress, in the amount of approximately $1,000; (v) a claim of common-law conversion, presumably under Colorado law, relating to the same events as the civil theft claim; (vi) tortious interference with contractual relations, in that Cypress had contracts with various clients and that Mr. Davis induced those clients not to perform those contracts by engaging in consulting services with the clients despite Cypress' exclusivity agreements and by directing the clients to make payments to him, knowing that the payments should have been directed to Cypress; (vii) breach of contract, apparently under Colorado law, relating to Mr. Davis' breach of a Solicitation and Engagement Agreement he had with Cypress

that allegedly limited his ability, post-separation, to provide consulting services to Cypress' clients; and (viii) a claim for unjust enrichment, presumably under Colorado law, that Mr. Davis "receiv[ed] excessive compensation for work in the franchise restaurant industry without paying the associated expenses."

Mr. Davis filed counterclaims/third-party claims (# 60) against both Cypress and Mr. Zuccarello, alleging: (i) breach of contract against both defendants, in that the two men had a partnership agreement addressing Mr. Davis' promised compensation and that the defendants breached that agreement by failing to pay Mr. Davis properly; (ii) wrongful disassociation of a partnership against Mr. Zuccarello, in violation of C.R.S. § 7-64-602; (iii) as an alternative to Claim 2 (which is premised upon an alleged partnership agreement), breach of contract against both defendants, in that Mr. Davis and Mr. Zuccarello conducted their mutual business under "a series of oral joint venture[ ]" agreements, particularly relating to compensation, and that the defendants breached those agreements by not paying Mr. Davis properly; (iv) breach of fiduciary duty, presumably under Colorado law, against both defendants arising from their failure to properly compensate Mr. Davis in various respects; (v) as an alternative to Claims 2 and 3, a claim sounding in breach of contract against both defendants, relating to an otherwise unspecified agreement the parties had regarding Mr. Davis' entitlement to various items of compensation; (vi) promissory estoppel, presumably under Colorado law, in that the defendants made promises to Mr. Davis about his compensation with Cypress, then repudiated those promises after Mr. Davis performed work for Cypress in reliance upon them; (vii) a claim for a declaratory judgment on various subjects, including that the parties had a partnership agreement that was improperly terminated and that Mr. Davis is entitled to continue business operations under the "Cypress" name; (viii) "constructive fraud" under both North Carolina and Colorado

law, essentially deriving from the same facts underlying the previous claims; (ix) – (xi) various equitable claims, asserted under both Colorado and North Carolina law, seeking dissolution of the parties' partnership, an accounting, and receivership if Cypress' assets; (xii) a claim under both North Carolina and Colorado statutes and regulations requiring the prompt payment of wages; (xiii) and (xiv) claims sounding in unjust enrichment and quantum meruit, under an unspecified jurisdiction's common law, relating to Mr. Davis' compensation; and (xv) tortious interference with prospective economic advantage, in that Mr. Zuccarello and Cypress usurped business opportunities when prospective clients contacted the defendants in search of Mr. Davis' services.[2]

Both sides move for summary judgment on the other side's claims. Cypress' motion **(#141, 142)** argues that: (i) Mr. Davis lacks standing to pursue any of his claims against Cypress because Mr. Davis' interactions with Cypress were performed though an entity Mr. Davis owned (Cypress International, Inc., which, for purposes of clarity, the Court will refer to as "CI"), and that entity, rather than Mr. Davis, suffered the alleged injuries; (ii) as to Mr. Davis' claims for breach of partnership agreement (Claim 1), breach of joint venture agreement (Claim 3), breach of contract (Claim 5), and promissory estoppel (Claim 6), that Mr. Davis cannot show that after 2010, he and Mr. Zuccarello and Cypress ever reached a clear and definite agreement as to Mr. Davis' compensation; (iii) as to those same claims, Cypress is entitled to judgment on its affirmative defense that in 2012, Mr. Davis' waived any claim for a share of revenues from business originated by Mr. Zuccarello; (iv) as to those same claims, Cypress is entitled to judgment on its affirmative defense of statute of limitations because Mr. Davis' claims to unpaid

---

[2]     The Court has since dismissed the quantum meruit claim and claim for unpaid wages, and limited the constructive fraud and fiduciary duty claims to events occurring after July 2013. *See* Docket # 90.

compensation involve agreements on case-by-case basis (subject to a three-year limitations period under C.R.S. § 13-80-101(1)), rather than liquidated amount (subject to a six-year limitations period under C.R.S. § 13-80-103.5(1)); and (v) as to the joint venture claim (Claim 3), Mr. Davis cannot show that the parties entered into separate joint venture agreements with each client.

Mr. Davis' summary judgment motion (# 143) argues that Mr. Davis is entitled to summary judgment: (i) on Cypress' claim for misappropriation of trade secrets because Cypress cannot identify any particular trade secret that was misappropriated and cannot establish that it suffered any loss as a result of any misappropriation; (ii) on Cypress' civil theft claim relating to trade secrets, for essentially the same reasons; (iii) on Cypress' claim for tortious interference with contract because Cypress cannot show that any of the clients whom Mr. Davis' allegedly interfered actually breached their contract with Cypress; (iv) on Cypress' breach of contract claim because Cypress cannot show that it suffered any loss because of Mr. Davis' alleged breach of contract and solicitation of Cypress' clients; and (v) on Cypress' unjust enrichment claim because Cypress cannot establish the value of the benefit that Mr. Davis' allegedly received.

## III.    Standard of Review

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Thus, the primary question presented to the Court in considering a Motion for Summary Judgment or a Motion for Partial Summary Judgment is: is a trial required?

A trial is required if there are material factual disputes to resolve. As a result, entry of summary judgment is authorized only "when there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1137 (10th Cir. 2016). A fact is material if, under the substantive law, it is an essential element of the claim. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if the conflicting evidence would enable a rational trier of fact to resolve the dispute for either party. *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013).

The consideration of a summary judgment motion requires the Court to focus on the asserted claims and defenses, their legal elements, and which party has the burden of proof. Substantive law specifies the elements that must be proven for a given claim or defense, sets the standard of proof, and identifies the party with the burden of proof. *See Anderson*, 477 U.S. at 248; *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). As to the evidence offered during summary judgment, the Court views it the light most favorable to the non-moving party, thereby favoring the right to trial. *See Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1215 (10th Cir. 2013).

Motions for summary judgment generally arise in one of two contexts – when the movant has the burden of proof and when the non-movant has the burden of proof. Each context is handled differently. When the movant has the burden of proof, the movant must come forward with sufficient, competent evidence to establish each element of its claim or defense. *See* Fed. R. Civ. P. 56(c)(1)(A). Presumably, in the absence of contrary evidence, this showing would entitle the movant to judgment as a matter of law. However, if the responding party presents contrary evidence to establish a genuine dispute as to any material fact, a trial is required and the motion must be denied. *See Leone v. Owsley*, 810 F.3d 1149, 1153 (10th Cir. 2015); *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013).

A different circumstance arises when the movant does not have the burden of proof. In this circumstance, the movant contends that the non-movant lacks sufficient evidence to establish a *prima facie* case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The moving party must identify why the respondent cannot make a *prima facie* showing; that is, why the evidence in the record shows that the respondent cannot establish a particular element. *See Collins*, 809 F.3d at 1137. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, then a trial is required. Conversely, if the respondent's evidence is inadequate to establish a *prima facie* claim or defense, then no factual determination of that claim or defense is required and summary judgment may enter. *See Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007).

## IV.    Analysis

### Mr. Davis' Motion

#### A.    Misappropriation of Trade Secret (Claim 2)

To prove a claim of misappropriation of trade secrets under the Colorado Uniform Trade Secrets Act (C.R.S. § 7-74-101 *et seq.*), a plaintiff must establish the following elements: 1) that it possessed a valid trade secret, 2) that the trade secret was disclosed or used by the defendant without consent, and 3) that the defendant knew, or should have known, that the trade secret was acquired by improper means. *See Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 9 F.3d 823, 847 (10th Cir. 1993). Colorado statute defines a trade secret to be "the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, improvement, confidential business or financial information, listing of names, addresses, or telephone numbers, or other information relating to any business or profession which is secret and of value." C.R.S. § 7-74-102(4). Moreover, the holder of an alleged trade secret must have

acted reasonably to prevent its disclosure.  *See Saturn Sys. Inc. v. Militare*, 252 P.3d 516, 522 (Colo. App. 2011).

Mr. Davis alleges that Cypress cannot come forward with evidence sufficient to establish the existence of any trade secret that he misappropriated, and separately that Cypress cannot show that it suffered a loss as a result of any such misappropriation.

Cypress has adduced the affidavit of Mr. Zuccarello, which explains that Cypress maintains a "clients and contacts database" that includes numerous industry contacts (both prospective buyers and sellers of franchises); information about the contacts' size, profits, and territory; competitor information; lender and banking information, and various other details.  Mr. Zuccarello states that he complied the database himself over two decades of work, that the database would be of significant value to competitors who would otherwise be hard-pressed to replicate its contents using publicly-available information.  Mr. Zuccarello states that access to the database is controlled by a password that he issues to Cypress personnel whose work requires such access.  Cypress has also come forward with evidence that Mr. Davis made use of documents contained in the Cypress database when he was soliciting Cypress clients after leaving Cypress' employ and forming his own business.  Thus, the Court finds that Mr. Zuccarello's affidavit suffices to establish at least a triable issue as to whether the Cypress database constitutes a trade secret under Colorado law and whether Mr. Davis misappropriated some or all of it.

As to Mr. Davis' argument that Cypress cannot show that it suffered a loss due to his alleged misappropriation of trade secrets, Colorado law provides that a party whose trade secret is misappropriated may recover compensatory damages that reflect, among other things, research and development costs that the defendant would have incurred in attempting to replicate the

stolen trade secret through the defendant's own efforts. *Sonoco Products Co. v. Johnson*, 23 P.3d 1287, 1289 (Colo.App. 2001). Cypress cites to the report of its expert, Shawn Fox, who has opined[3] that, among other things, Mr. Davis' misappropriation of Cypress' database saved him approximately $1.41 million compared to the cost of accumulating that database on his own. Thus, the Court is satisfied that Cypress has come forward with sufficient evidence of recoverable loss to support its trade secret misappropriation claim. Accordingly, Mr. Davis' motion is denied with regard to that claim.

**B.      Civil Theft of Trade Secret (Claim 3)**

Mr. Davis also moves for summary judgment on Cypress Advisors' claim for civil theft of trade secrets. This claim derives from C.R.S. § 18-4-405, sometimes referred to the "civil theft statute," which provides that, where a defendant has obtained the plaintiff's property by theft, the plaintiff may "maintain an action against. . . the taker" and recover statutory damages of $200 or trebled actual damages, plus attorney fees.

Mr. Davis' motion challenges the sufficiency of this claim based largely upon the same arguments addressed above – that the material he allegedly took does not rise to the level of "trade secrets."[4] Giving due regard to the parties' right to be heard, the Court nevertheless finds it appropriate to resolve this claim on a ground not raised by Mr. Davis nor briefed by Cypress. (The Court is satisfied that the issue presented is one of law and that the outcome is clear, such that giving the parties an opportunity to brief the issue would not be likely to change the

---

[3]      The deadline for parties to file motions challenging expert opinions under Fed. R. Evid. 702 has passed without either side raising challenges. Accordingly, the Court will assume that Mr. Fox's opinions as set forth in the report will be admissible at trial.

[4]      He also alleges that Cypress cannot prove that he acted with the requisite *mens rea* nor show any injury. Were the Court to reach these arguments by Mr. Davis, it would reject them both.

outcome.)  CUTSA broadly preempts other laws providing civil remedies for misappropriation of a trade secret.  C.R.S. § 7-74-108(1).  Because Cypress unambiguously alleges that the materials taken by Mr. Davis constitute trade secrets, CUTSA preempts such a civil theft claim.

One of the exceptions to that preemption is for statutes that provide for "criminal remedies" for the theft of trade secrets.  C.R.S. § 7-74-108(2)(c)(3).  Although the civil theft statute is codified within Colorado laws relating to criminal offenses, the remedy it provides is civil in nature, not criminal (*i.e.* imprisonment or fines).  Indeed, Colorado criminal law contains an entirely separate provision that specifically criminalizes the theft of trade secrets, further suggesting that the civil theft statute does not create criminal penalties.  C.R.S. § 18-4-408.  Moreover, by authorizing treble damages, C.R.S. § 18-4-405 creates remedies that are inconsistent with CUTSA's remedial scheme.  Under such circumstances, this Court, like others that have considered the issue, finds that a claim under Colorado's civil theft statute that is premised upon the theft of a trade secret is preempted by CUTSA.  *See e.g. Powell Products, Inc. v. Marks*, 948 F.Supp. 1469, 1474-75 (D.Colo. 1996); *Hawg Tools, LLC v. Newso International Energy Servs., Inc.*, 2015 WL 1064519 (D.Colo. Feb. 23, 2015) (unpublished).

Courts in Colorado have found that CUTSA did not preempt a civil theft claim where the civil theft claim was premised upon the theft of items that were not trade secrets.  *See SBM Site Services, LLC v. Garret*, 2012 WL 628619 (D.Colo. Deb. 27, 2012) ("[b]ecause Plaintiff's Amended Complaint alleges that, in addition to trade secrets, Able and Garrett stole actual physical items, the Court finds that its [civil theft] claim is not preempted."); *see also Powell*, 948 F.Supp.2d at 1475 ("because plaintiff's claim also seeks recovery of the physical items stolen, including blueprints and drawings, which would not be the subject of a misappropriation claim under the UTSA, plaintiff's conversion claim is not entirely preempted").  But, as

mentioned above, Cypress' claim is unambiguous that Mr. Davis stole only information,[5] and only information that could be characterized as a trade secret. Accordingly, the Court, *sua sponte*, dismisses Cypress' claim for civil theft as preempted.

### C. Intentional Interference with Contractual Relations (Claim 6)

Mr. Davis next moves for summary judgment on Cypress' claim for tortious (sometimes "intentional") interference with contractual relations. Although the precise articulations of the relevant elements can differ, it is well-established that, to prove a claim for tortious interference with contract, Cypress must show: (1) that Mr. Davis caused a third party to fail, in some significant aspect, to perform a contractual duty that the third party owed to Cypress, (2) that Mr. Davis' conduct was wrongful; (3) that Mr. Davis acted for the primary purpose of interfering with the contract or acted knowing that the interference was substantially certain to occur; and (4) Cypress suffered an injury as a result of Mr. Davis' interference. *Spring Creek Exploration & Production Co., LLC v. Hess Bakken Investment II, LLC*, 887 F.3d 1003, 1022-23 (10th Cir. 2018); *Campfield v. State Farm Mut. Auto Ins. Co.*, 532 F.3d 1111, 1122 (10th Cir. 2008). The question of whether a party's conduct is "wrongful" depends on a constellation of factors including the nature of the actor's conduct and motive, the interests interfered with, the relations between the parties, and the interests of society. *Memorial Gardens, Inc. v. Olympian Sales and Management Consultants, Inc.*, 690 P.2d 207, 210 & n. 7 (Colo. 1984).

Mr. Davis appears to concede that Cypress can establish that it had contractual agreements with three entities, known as RMA, ZAK, and R&R, by which Cypress would be the

---

[5]    The cases cited herein, most notably *Powell* and *Hawg Tools*, conclude that the theft of intellectual property that does not rise to the level of a trade secret would not give rise to a claim for civil theft, as the property's owner cannot demonstrate some other legal basis to exclusive use. That same reasoning would apply here if it were ultimately concluded that Cypress' alleged trade secrets did not rise to that level.

entities' exclusive financial advisor in exchange for certain payments by the entities at the conclusion of any transaction. Mr. Davis also appears to concede (at least for purposes of this motion) that, knowing of these exclusivity arrangements, he nevertheless solicited the three entities to consult with him as well as Cypress. All three entities consulted with Mr. Davis to some degree, apparently in breach of their exclusivity promises to Cypress. But Mr. Davis argues that none of the entities ultimately breached their contract with Cypress, insofar as all three entities made all fee payments to Cypress as required by their contracts.[6]

In response, Cypress contends that Mr. Davis interfered with its contract with each of the entities as follows:

> • As to all three entities, Mr. Davis induced the entities to breach their agreement to work exclusively with Cypress. Cypress does not, however, identify how Mr. Davis' involvement with each entity deprived Cypress of any particular benefit under its contracts, except as set forth below.

> • As to the R&R contract, R&R's payment to Cypress was due upon closing of the deal on September 14, 2016. At that time, both Cypress and Mr. Davis made competing demands on R&R for payment. R&R therefore put the $150,000 payment it owed into "escrow," expecting Cypress and Mr. Davis to reach a resolution as to their competing demands. Cypress and Mr. Davis continued to dispute each other's entitlement to the escrowed funds and in October 2017, Cypress commenced suit against R&R for non-payment. Cypress and R&R eventually settled that dispute.

> • As to the ZAK contract, while still employed at Cypress, Mr. Davis was reimbursed by Cypress for certain expenses he had incurred involving ZAK, in the amount of roughly $1,000. Cypress later sent an invoice to ZAK for those expenses and ZAK made out a check payable to Cypress According to Mr. Zuccarello's affidavit (the sole evidence cited by Cypress on this

---

[6] The transaction with RMA never closed, for reasons that appear to be unrelated to this lawsuit. Thus, RMA was not required to make any payment to Cypress.

point), Mr. Zuccarello was told[7] by ZAK representatives that Mr. Davis had asked ZAK to send the reimbursement check to Mr. Davis' address instead of Cypress'. Mr. Davis then endorsed the check on Cypress' behalf and deposited it in his own account. When Cypress learned that Mr. Davis had intercepted the check, it requested that ZAK issue a new check to Cypress and ZAK did so. After some unspecified communications, and roughly a month after first receiving the check, Mr. Davis tendered a check to ZAK for the full amount in question.

Mr. Davis' argument that Cypress cannot show any ultimate breach of its agreements with the three entities – that is, that it cannot show that it did not ultimately receive payment for a completed deal – misconstrues the required element of interference. The tort does not require a complete breach of the primary obligation under the contract; rather, the element of interference can be satisfied where the defendant "has merely prevented the contract's performance or made it more difficult." *Ecco Plains, LLC v. U.S.*, 728 F.3d 1190, 1199 (10th Cir. 2013); *Slater Numismatics, LLC v. Driving Force, LLC*, 310 P.3d 185, 191 (Colo.App. 2012) ("impacts short of total breach or impossibility" may suffice). Mr. Davis' citations to various cases for the proposition that a full breach is required predate clear statements to the contrary in cases like *Ecco*.

Although the holdings of cases like *Ecco* and *Slater* raise, by negative pregnant, an interesting legal question – what types of interference short of breach suffice to establish the tort? – Mr. Davis' reply brief does not pursue that question.[8] Rather, Mr. Davis' reply doubles

_____

[7]    In reply, Mr. Davis does not object to Cypress relying on hearsay testimony from Mr. Zuccarello, and thus, the Court ignores any concerns about the admissibility of Mr. Zuccarello's statements.

[8]    Were the Court to reach that question, it would find that, at a minimum, there is sufficient evidence to permit a tortious interference claim to go forward with regard to Mr. Davis' involvement in the R&R deal. There is sufficient evidence that Mr. Davis knew of R&R's agreement to exclusively consult with Cypress, that Mr. Davis nevertheless chose to work with R&R in violation of that exclusivity arrangement, and that the effect of Mr. Davis' actions made it more difficult for R&R to perform its obligations, given that his involvement triggered a

down on his argument that an actual breach is necessary: "there has been no breach of any existing contract. . . such contracts have been fully performed." Docket # 155 at 8. In the absence of an argument by Mr. Davis challenging the legal sufficiency of particular incidents of interference set forth above, the Court rejects Mr. Davis' "total breach" argument.

Mr. Davis also argues that Cypress cannot show that it suffered any injuries as a result of his interference with Cypress' contracts with the three entities. In response, Cypress posits that although both ZAK and R&R were longstanding customers of Cypress, they ceased doing business with Cypress after the contracts discussed above were completed.[9] In short, then, Cypress's argument is that its injury resulting from Mr. Davis' interference is the lost future business involving these entities.

Under Colorado law, injuries sufficient to support a claim for tortious interference with contract include direct pecuniary losses from the breached contract, consequential losses that flow from the interference, and harm to reputation. *Westfield Development Co. v. Rifle Inv. Assocs.*, 786 P.3d 1112, 1120 (Colo. 1999), *citing* Restatement (Second) Torts, § 774A(1). At the same time, it is important to recognize the distinct differences between a claim for tortious interference with contract – which focuses on *existing* business relationships – and the tort of intentional interference with prospective relations, which is concerned with *future* business. The latter claim is the appropriate one where the defendant's conduct "cause[d] a third party not to . . . continue relations" with the plaintiff, and it examines "the probability that a contract would

---

compensation dispute that delayed Cypress' payment for 18 months and ultimately forced it to commence litigation.

[9] Although both the ZAK and R&R transactions involved Cypress being deprived money it was entitled to for some period of time, Cypress has not argued that the lost time value of that money is an injury sufficient to support the tort, and thus, the Court will not assume that Cypress intends to claim such losses.

have resulted" in the future. *Klein v. Grynberg*, 44 F.3d 1497, 1506 (10th Cir. 1995) (emphasis added). Indeed, *Memorial Gardens* emphasizes that Colorado law "provides less protection for contracts terminable at will" – which, by all appearances, ZAK and R&R's contracts with Cypress were, at least as they related to future transactions – "because an interference with a contract terminable at will is an interference with a future expectancy." 690 P.2d at 211.

It is clear, both from Cypress' briefing and from its damage expert's report, that Cypress' claimed injury from Mr. Davis' interference is the fact that ZAK and R&R declined to retain Cypress for <u>future</u> work. Such a loss is not compensable in a claim for tortious interference with existing contractual relations. Cypress argues that general common law principles, embodied in Second Restatement of Torts, that suggest that revenue associated with "prospective future contracts" is properly recoverable. But that argument misconstrues the clear distinction in Colorado law between claims for tortious interference with <u>existing</u> contracts and with <u>prospective</u> relations. Cypress' tortious interference claim in the Amended Complaint clearly addresses <u>existing</u> contracts. *Docket* #28 at ¶ 107, 109 (Cypress "held contracts" with ZAK and R&R and Mr. Davis "caused [them] not to perform their contracts"). Thus, the Court finds that Cypress' has not come forward with evidence that would suggest that it has suffered a loss resulting from Mr. Davis' interference with its <u>existing</u> contracts with ZAK and R&R, and thus, Mr. Davis is entitled to summary judgment on Cypress' claim for tortious interference with contract.[10]

_____

[10] The Court expresses no opinion as to whether Cypress could, at this late date, seek to amend its Complaint to convert its tortious interference claim to one focused on prospective business advantage. There are several obstacles that Cypress would have to overcome to assert such a claim against Mr. Davis: Mr. Davis' status as a bona fide competitor with Cypress for these clients' future business, the fact that neither Cypress nor Mr. Davis ultimately landed the clients' future business, and the factual question of whether it was Mr. Davis' interference, as

### D. Breach of contract

Mr. Davis moves for summary judgment on Cypress' claim that he breached his own Solicitation and Engagement Agreement with Cypress. Cypress concedes this in its summary judgment response, and thus, the Court grants summary judgment to Mr. Davis on this claim.

### E. Unjust enrichment

Finally, Mr. Davis seeks summary judgment on Cypress' unjust enrichment claim against him. The Court need not delve deeply into the arguments on this issue. Cypress' response brief makes clear that its contention is that Mr. Davis was unjustly enriched "by improperly taking and using Cypress' <u>confidential and proprietary information</u> to compete against it." The Court understands this "confidential and proprietary information" to be the same Cypress documents and information encompassed by Cypress' CUTSA claim. For the same reasons that Cypress' civil theft claim is preempted by CUTSA, its claim of unjust enrichment relating to Mr. Davis' taking of its trade secrets is also preempted. Accordingly, Mr. Davis is entitled to summary judgment on this claim.

Accordingly, the Court grants Mr. Davis' summary judgment motion as to Cypress' civil theft of trade secrets (Claim 3), tortious interference with contract (Claim 6), breach of contract (Claim 7), and unjust enrichment (Claim 8) claims, and denies it with respect to Cypress' CUTSA claim (Claim 2).

<u>Cypress' motion</u>

The Court now turns to Cypress' motion for summary judgment on the claims directed against it by Mr. Davis.

---

opposed to, say, the acrimonious breakup between Cypress and Mr. Davis, that caused clients to decide not do future business with either one.

## A. Standing

Cypress first interposes a general argument that Mr. Davis lacks standing to pursue any of his claims relating to his compensation with Cypress because any agreement he had with Cypress was undertaken not in Mr. Davis' own name, but through CI, Mr. Davis' business entity. Thus, Cypress argues, any injury was felt by CI, not by Mr. Davis himself, and that he therefore lacks standing to bring his claims. It is axiomatic that only the party that suffered a particular legal injury has the standing to sue to remedy that injury. *See generally Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

There is considerable evidence that, when first establishing the alleged "Cypress partnership" in 2000, Mr. Davis entered into any agreement with Cypress not in his own name, but rather through CI. In many instances in the record, including repeatedly in Mr. Davis' own summary judgment responses, Mr. Davis acknowledges that CI "represented" his interests in the partnership. Mr. Davis does not dispute that, throughout the 16-year relationship between the parties, Cypress issued all disbursements to CI, not to him.[11] All of these facts suggest that it is CI, rather than Mr. Davis, that suffered from the allegedly improper dissolution of the "Cypress partnership."

At the same time, there is also considerable evidence that the parties did not regularly observe any corporate formalities involving CI. Most notably, CI was dissolved in 2005 – apparently as a result of Mr. Davis' inattention – but the parties continued to act as if CI was a

---

[11] There is some evidence in the record that, internally, Cypress tracked revenues and expenses using Mr. Zuccarello and Mr. Davis' names or initials, not the names of their corporate representatives. But such internal tracking has no particular legal significance, any more than internal tracking based on employee I.D. numbers or some other labels would. The actual payee on disbursements or expenses has significance, and the record reflects that all disbursements were made to CI, not to Mr. Davis personally.

viable entity for nearly a decade thereafter.  For example, Cypress continued to make disbursements to CI through 2015, and Mr. Davis filed tax returns on behalf of CI through 2015 and 2016.  Cypress purportedly[12] entered into consulting contracts with Mr. Davis in his own name, promising to compensate him directly, not through CI, for his consulting services. Similarly, it entered into equity agreements with Mr. Davis in his own name, promising him, not CI, an increasing equity ownership stake in Cypress.  In such circumstances, particularly after CI's formal dissolution, Georgia law (which, Cypress concedes, would otherwise govern CI's rights and obligations) would deem Mr. Davis' actions on behalf of a non-existent legal entity to be Mr. Davis acting individually, albeit under the "trade name" of CI, and would deem him to have standing to sue in his own name for injuries that purportedly ran to CI.  *See Wiekert v. Logue*, 173 S.E.2d 268, 269 (Ga. App. 1970).  Accordingly, the Court rejects Cypress' argument that Mr. Davis lacks standing to pursue his claims.

## B.  Revenue sharing

Mr. Davis' first, third, fifth, and sixth claims for relief all allege variations on the notion that he and Cypress had a contractual agreement by which Mr. Davis would receive 25% of revenues generated by Mr. Zuccarello.  The claims differ in the precise characterization of that agreement: Claim One posits that it was a "partnership agreement"; Claim Three describes it as a "joint venture" agreement; Claim Five simply describes it as an undifferentiated contract; and Claim Six contemplates a quasi-contractual arrangement to remedy an unjust enrichment of Cypress. Because all three legal claims are premised upon the existence of a contract, Mr. Davis

---

[12]     Although the effectiveness of these contracts is disputed, the Court need not make any findings on that issue.  It is enough to note that such contracts were drafted to bind Mr. Davis, not CI, and that it was expected that Mr. Davis would sign the contracts in his own name, not on behalf of CI.

must generally demonstrate the following elements: (i) the existence of a binding contract between the parties; (ii) Mr. Davis' performance of his obligations under that contract; (iii) Cypress' non-performance of its own obligations; and (iv) resultant losses suffered by Mr. Davis. *Western Distributing Co. v. Diodosio*, 841 P.2d 1053, 1058-59 (Colo. 1992).

      1.  <u>Existence of an agreement</u>

Cypress contends that Mr. Davis cannot establish the first element – the existence of any actual contractual agreement with Cypress between 2011 and 2016.

The record reflects that the parties did not have any formal written agreement regarding the split of revenue after about 2005. But it does reflect that from 2005 to 2011 Cypress generally made payments of 25% of its annual net revenues to both Mr. Davis and Mr. Zuccarello – in other words, that Mr. Davis was paid at least 25% of the revenues earned by Mr. Zuccarello, and vice versa. Specifically, at the close of each year, Mr. Zuccarello would prepare a spreadsheet that recited the revenue earned by Cypress on each deal during the year and identified a proposed allocation of that revenue between Mr. Zuccarello and Mr. Davis. There is some evidence that there was often some give-and-take between Mr. Davis and Mr. Zuccarello regarding particular issues each year – *e.g.* whether a particular deal warranted a more equitable split, or whether certain expenses should be allocated to certain deals -- but the general thrust of the evidence indicates that, from 2005 through 2010, Cypress proposed that each individual was always allocated at least 25% of the revenues from each deal.

That practice changed in 2011. Believing that there was a disparity in the amount of work that each individual was putting in, Mr. Zuccarello proposed reducing Mr. Davis' share on certain deals to well below 25%. It is clear that extensive discussions and negotiations ensued

over several years, with Mr. Davis attempting to convince Mr. Zuccarello to return to a 25% minimum split. It is also clear that the discussions were ultimately unsuccessful.

Cypress contends that Mr. Davis cannot show that the parties ever had a contractual agreement guaranteeing each partner a minimum of 25% of revenues, and that the annual revenue splits, both from 2005-2010 and from 2011 onward, reflect that revenue sharing was always the subject of *ad hoc* negotiations, not constrained by any agreement as to minimum shares. Although Mr. Davis' deposition does make some reference to the annual revenue split spreadsheets being a process of "both of us making proposals and negotiating," it is clear from the entirety of Mr. Davis' testimony that he believed that the 25% split was a floor, and that the "negotiating" he frequently did with Mr. Zuccarello involved the extent to which Mr. Davis might capture something in <u>excess</u> of the 25% minimum. Contrary to Cypress' argument, the Court is satisfied that Mr. Davis' evidence, taken in the light most favorable to him, demonstrates a triable issue of fact as to whether the parties had a standing agreement since 2005 that promised a 25% minimum revenue split to each individual.

To be sure, Cypress and Mr. Zuccarello dispute that such an agreement existed. And Cypress argues that, because Colorado follows an objective theory of contract formation, Mr. Davis must not only show his own subjective beliefs about the existence of a revenue-sharing agreement, but also show that Mr. Zuccarello shared that understanding. *Citing Avemco Ins. Co. v. Northern Colorado Air Charter, Inc.*, 38 P.3d 555, 559 (Colo. 2002). But a meeting of the minds can be "evidenced through words or conduct." *Id.* Here, the Court is satisfied that the parties' course of dealing – a minimum 25% revenue split consistently proposed by Mr. Zuccarello between 2005 and 2010 --is conduct by Cypress that a factfinder could consider as

evidence that Cypress shared Mr. Davis' understanding that revenue splits would start at 25% and be subject to negotiation above that level.

Accordingly, the Court is satisfied that Mr. Davis has come forward with sufficient evidence to warrant a trial on his contention that he and Cypress had an agreement providing for a minimum 25% revenue split, and that Cypress breached that agreement from 2011-2015.

## 2. <u>Waiver</u>

Cypress separately seeks summary judgment on some of its affirmative defenses to Mr. Davis' contract-based claims. First, Cypress contends that, to the extent the parties had a contractual agreement regarding minimum revenue shares, Mr. Davis waived any claim for unpaid revenue for the year 2012. Waiver is the intentional relinquishment of a known right. *Sellers v. Allstate Ins. Co.*, 82 F.3d 350, 352 (10th Cir. 1996). Although an intent to waive may be inferred from a party's conduct, the conduct itself must be unambiguous and a clear manifestation of the party's intention not to assert the right. *Department of Health v. Donahue*, 690 P.2d 243, 247 (Colo. 1984). Cypress bears the burden of proving Mr. Davis' waiver of a claim to the 2012 revenue split.

Cypress points to a January 4, 2012 e-mail from Mr. Davis to Mr. Zuccarello in which Mr. Davis states:

> What I want to try to accomplish is to reach consensus on working together on joint situations so we work toward a bigger pie. I don't want or expect anything out of Blue Ribbon, Coda, or situations where you are the point person and really only contact. . . I think that based on the proposed splits that we've fixed the bigger issue going forward. I won't be sharing in [Zuccarello]-initiated and managed transactions. . . However, our deal was our deal and I think we've changed this. [ ] This doesn't work for you and I understand why in the rear view mirror. Going forward, I think we've addressed. If I'm not taking a 25% share of your transactions, this will balance over time. I've attached my suggestions on the split for this period. 10% stake on shared

transactions with a 25% share of expenses. . . Need to discuss tomorrow.

A year later, in a 2013 e-mail discussing that year's revenue splits, Mr. Davis commented on the agreement the parties reached in 2012: "Last year we reached an agreement . . . that barring unusual circumstances, the future arrangement would be balanced with a 25/75 minimum split unless the [numbers] were significantly out of balance."

Cypress contends that these e-mails reflect Mr. Davis' voluntarily relinquishment of any claim to a 25% revenue split for deals done in 2012. Mr. Davis has not argued that the e-mails do <u>not</u> reflect an agreement on his part to waive claims relating to the 2012 revenue sharing. He does argue that the 2012 e-mail was part of "larger settlement discussions to resolve the many issues that surfaced between the partners" and that "[b]ecause the parties never reached a global settlement on all outstanding partnership issues, [he] never formally agreed to waive his claim for partnership profits wrongfully withheld in 2012." But nothing in the 2012 e-mail reads as a conditional offer by Mr. Davis to waive his 2012 claims <u>in exchange for</u> something to which Cypress had yet to agree. To the contrary, the e-mail appears to reflect Mr. Davis' understanding that a new agreement had already been reached. He states his understanding that "we've fixed the bigger issue," and "we've addressed" the situation "going forward." Indeed, contrary to the arguments in Mr. Davis' brief that the 2012 e-mail was proposing an offer, Mr. Davis' deposition testimony about the 2012 e-mail indicates that his decision to relinquish claims to a revenue split on Mr. Zuccarello's work in 2012 was an attempt "to make peace so that we could preserve the momentum that we had in the entity. . . I thought there was a chance that we could work this out over a longer period of time. This was <u>an agreement</u> out of a point in time as an attempt to keep the peace." (Emphasis added.) Thus, Mr. Davis' own testimony comports with a reading of the 2012 e-mail that Mr. Davis had agreed to forego the 2012 revenue both pursuant to "an

agreement" resolving future revenue disputes and as a peace offering to appease Mr. Zuccarello. Thus, the record fully supports a conclusion that Mr. Davis knowingly and voluntarily relinquished his rights to claim revenue splits for 2012.[13]

Accordingly, the Court finds that there is no genuine dispute of fact and that Mr. Davis waived his claim to revenue sharing for 2012. Cypress is entitled to summary judgment on Mr. Davis' contract-based claims as they relate to 2012 revenue sharing.[14]

3. Timeliness

Cypress also seeks summary judgment on its affirmative defense that some of Mr. Davis' contract claims are barred by the statute of limitation.[15] Specifically, Cypress contends that Mr. Davis' contract claims are governed by Colorado's three-year limitations period for claims

_____

[13] To be sure, Mr. Davis' waiver of his claim to 2012 revenue was premised upon his understanding that he and Mr. Zuccarello had reached an agreement to restore the minimum 25% revenue split in 2013 and beyond. However, it is clear from Mr. Davis' claims and other evidence in the record that the revenue splits remained a point of contention in 2013 and thereafter. Cypress finds itself in a tricky situation, attempting on one hand to claim that Mr. Davis agreed to waive his 2012 claims based upon the parties reaching "an agreement" for future revenue splits, yet also arguing that no such agreement existed in and after 2013. Indeed, because the Court adopts Cypress' waiver argument here, it may be that Cypress is judicially estopped from maintaining that the parties did <u>not</u> have an agreement regarding revenue splits beginning in 2013. Certainly, if Cypress were to take the position that the "agreement" referenced in Mr. Davis' 2012 e-mail did not exist, the Court would be more willing to accept Mr. Davis' argument that the e-mail must instead have been a conditional proposal, not an outright waiver.

[14] Mr. Davis contends that his contract claims encompass more than just unpaid revenue., such that judgment for Cypress on the issue of revenue sharing in 2012 does not dispose of the claims relating to that year in their entirety. The Court need not consider that question at this time.

[15] Cypress does not specifically state the dates they contend are encompassed by the limitation period, but the Court assumes they would argue that a three-year limitation period would be measured backwards from February 1, 2017, the date Mr. Davis first asserted his counterclaims in this case (**# 45**).

premised upon a contract, C.R.S. § 13-80-101(1), rather than the six-year limitation period for claims seeking a liquidated sum.  C.R.S. § 13-80-103.5(1)(a).

The Court has previously addressed this issue.  In recommending the denial of Cypress' Motion to Dismiss on limitation grounds, Magistrate Judge Hegarty found that the six-year limitation period applied.  Cypress did not raise any objections to that finding and the Court adopted it.

Cypress now argues that Mr. Davis' deposition testimony has thrown that ruling into question, but Cypress reaches that conclusion by misunderstanding Mr. Davis' claims.  As noted above, Mr. Davis' position is that he and Cypress had an agreement by which Mr. Davis would receive, at a bare minimum, 25% of Cypress' revenues on each deal.  Mr. Davis acknowledges that the parties understood that there was room for negotiation for revenue splits above the 25% floor, but contends that Cypress had no ability to go below that floor.  Although it is true that *ad hoc* negotiations between the parties over revenue might introduce some uncertainty into the amount at issue in the claims (thereby favoring a shorter limitation period), it is clear that Mr. Davis' claims here seek only the absolute 25% minimum revenue split, not some higher amount that the parties could have individually negotiated.  Because that sum is fixed and ascertainable from the record, the six-year limitations period is appropriate.  Accordingly, Cypress' motion for summary judgment on this issue is denied.

### 4.  Joint venture agreement

Finally, Cypress seeks judgment on Mr. Davis' Claim Three, which alleges that, in the alternative to the parties being partners, they entered into "a series of oral joint ventures . . . with each such client engagement constituting a separate joint venture."  Mr. Davis contends that each of these agreements called for Cypress to share revenue from the deal with Mr. Davis at a

minimum rate of 25%, yet Cypress breached several of those agreements between 2011 and 2015. It is not necessary to exhaustively address Colorado law regarding joint ventures, as Cypress' argument here is a simple one: that Mr. Davis cannot show that he and Cypress entered into a series of individual agreements for each Cypress deal between 2011 and 2015.

The contention that Mr. Davis and Cypress were joint venturers is somewhat underdeveloped in the record. It exists more as a theory – "if we weren't partners, we must have had some other legal relationship. Maybe it was a joint venture?" – than a conclusion that flows from particular evidence. And there is little to differentiate Mr. Davis' joint venture theory from this ordinary breach of contract claim (Claim Five), except to state that the former involves many individual contractual agreements between Mr. Davis and Cypress whereas the latter involves only one. Certainly, there is no evidence in the record to suggest that Mr. Davis and Cypress discussed, negotiated, and entered into new agreements with each other each time a client sought to retain their services. At most, the record reflects that, at the conclusion of each year, Mr. Davis and Mr. Zuccarello discussed how to divvy up the revenues and expenses that the business had earned from deals that had already been concluded. Thus, to the extent that Mr. Davis' joint venture claim depends upon proof of numerous individual agreements between himself and Cypress, one for each client, the record does not indicate that such agreements existed. Accordingly, the Court grants Cypress' motion for summary judgment directed at Claim 3.[16]

---

[16]     This is not to say that the record does not contain evidence that Mr. Davis and Cypress agreed to do business together and to share profits and losses. To the extent that they did not have a partnership, there is evidence in the record that they had a single contract that governed the entirety (or at least much of) their business relations. Indeed, Cypress has not challenged Mr. Davis' Claim Five, which alleges precisely this.

Accordingly, Cypress' motion for summary judgment is granted with respect to Mr. Davis' Claim 3 (breach of joint venture agreement) and to Claims 1 and 5 to the extent they relate to revenue sharing in 2012. The motion is denied in all other respects.

**V. Motions to restrict**

The last remaining matter the Court must address are numerous motions filed by the parties seeking to restrict public access to various filings and exhibits pursuant to D.C. Colo. L. Civ. R. 7.2. The Court will not dwell extensively on the standards governing such motions, except to observe that the party seeking restriction bears the burden to show that its privacy interests outweigh the strong public interest in having access to records that have been presented to and considered by the Court and that a party seeking restriction must show that alternatives, such as stipulation, summarization, and redaction, would not suffice. D.C. Colo. L. Civ. R. 7.2(c)(2), (4).

In the interests of brevity, the Court will dispense with an extensive recitation of each motion and simply enter its rulings:

**Docket # 148:** Mr. Davis seeks to restrict access to components of Cypress' motion (**#142**'s main document and a duplicate at **#144**) that discuss certain aspects of his financial and business arrangements, along with exhibits (**# 142-3, -4,** and **-5**) that document those arrangements. The Court finds that some components of the exhibits contain information for which a substantial public interest exists, even if other components of those exhibits contain material that would otherwise warrant restriction. Because the privacy interests could be addressed by redaction rather than restriction, and because Mr. Davis has not tendered redacted versions that could be publicly-filed, the Court denies his motion to restrict. The Court finds that the redactions to the publicly-filed brief are excessive, particularly regarding Mr. Davis' own

deposition testimony, as they conceal relevant information that the public has an interest in seeing and no meaningful privacy interest of Mr. Davis' are implicated by significant amounts of the redacted testimony. Accordingly, the motion is denied.

**Docket # 149**: This motion seeks to restrict access to an unredacted version of Cypress' motion for summary judgment (**# 142**'s main document and a duplicate at **# 144**), and certain exhibits (**# 142-9, -10, -11,** and **-12**), as well as a portion of Mr. Davis' summary judgment motion (**# 143**) and two exhibits to that motion (**# 143-2, -10**). The Court denies the motion as to all components of **Docket #142 (and #144)**, finding that the privacy interests cited by Cypress do not outweigh the public's interest in access to matters that form the core of the instant dispute. As to the components of **Docket # 143**, the Court finds that the privacy interests regarding the disclosure of the settlement amount could have been resolved via redaction, rather than restriction, but Cypress has not tendered redacted versions to be publicly-filed. Accordingly, the Court denies the motion as to those items. The Court denies the motion as to **Docket # 143-10**. Although that document contains extensive financial information for the parties herein, some of that financial information is central to the disputes herein, resulting in the public having a significant interest in access to it. Cypress has not proposed a redacted version that conceals the financial information to which there is no public interest, and in the absence of proposed redactions, the Court denies that portion of the motion pursuant to Local Rule 7.2(c)(4).

**Docket # 154:** Mr. Davis requests restriction of access to several exhibits attached to his summary judgment response (**# 152-3** through **-7, -18** through **-21, -23** through **-28, -31** through **-38**, and **-40**). Mr. Davis alleges that such documents contain sensitive financial information about him and his business. The Court finds that the public has a significant interest in access to certain items of information contained in these documents, making their wholesale restriction

inappropriate.  The Court further finds that redaction could address some of the privacy interests raised by Mr. Davis, but that Mr. Davis has not proposed redacted versions of these exhibits that could preserve the information relevant to the public without unduly disclosing irrelevant information implicating privacy concerns.  Accordingly, the motion is denied.

**Docket # 157:** Cypress moves to restrict access to various exhibits to its summary judgment response (**# 151-1, -3** through **-5**, **-7** through **-10**, **-15**, and **-17**).  **Docket #151-1** is already in redacted form and thus, no restriction on public access is necessary.  **Docket # 151-3 through -5 and -15** could have been filed in a redacted form that preserve their availability to the public regarding the issues before the Court without unduly disclosing Cypress' private information, but in the absence of tendered redacted versions to be publicly-filed, the Court denies the motion.  **Docket # 151-7** is Cypress' expert's report, which the Court has already refused to restrict in the absence of a publicly-accessible redacted version.  The Court can discern no meaningful privacy interests in **Docket # 151-8**.  The Court is unclear why **Docket #151-9** required a document, as opposed to simply an affidavit attesting to the fact of a settlement, but in any event, Cypress' privacy interests in this document could have been addressed by redaction rather than restriction, yet no redacted version is tendered.  The Court can discern no particular privacy interests in **Docket #151-10 or -17.**

**Docket # 160:** Cypress moves to restrict access to Mr. Davis' reply brief and certain exhibits (**# 155** main document and **155-1, -2**, and all of **# 156).**  The same documents and privacy interests addressed in this motion have been resolved above and the motion is denied for the same reasons previously given.

**Docket # 161**:  Mr. Davis seeks to restrict access to two exhibits to Cypress' reply brief (**# 159-2** and **-3**).  The public has an interest in having access to some portion of the documents

and Mr. Davis' privacy interests could have adequately been addressed through appropriate redactions, but no proposed redacted versions have been provided.  Accordingly, the motion is denied.

### VI.  Conclusion

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Cypress' Motion for Summary Judgment (**#142, 144**) and Mr. Davis' Motion for Summary Judgment (**# 143**), as set forth herein.  The Court **DENIES** each of the parties' Motions to Restrict Access (**#148, #149, #154, #157, #160, #161**) and directs that the Clerk of the Court lift all provisional restrictions on all documents relating to Docket # 142, 143, 144, 151, 152, 156, and 159.  This case being otherwise ready for trial, the parties file a Proposed Pretrial Order consistent with the instructions in Docket # 47 within 21 days, after which the matter will be set for a Pretrial Conference.

DATED this 18th day of March, 2019.

BY THE COURT:

Marcia S. Krieger
Senior United States District Judge