**E**XHIBIT **E**

1              IN THE UNITED STATES DISTRICT COURT

2                 FOR THE DISTRICT OF COLORADO

3                                    )
                                     )
4    CYPRESS ADVISORS, INC., a Florida  )
     corporation, d/b/a THE CYPRESS     )
5    GROUP,                          )
                                     ) Civil Action No.
6              Plaintiff,           ) 17-cv-01219-MSK-
     v.                             ) KLM
7                                    )
     KENT MCCARTY DAVIS, an          )
8    individual,                     )
     JIM CHRISTOPHERSON, an          )
9    individual, and                 )
     C SQUARED ADVISORS, LLC, a      )
10   North Carolina limited liability  )
     company,                       )
11                                   )
               Defendants.          )
12

13

14
          VIDEOTAPE DEPOSITION OF JIM CHRISTOPHERSON
15
          (CONFIDENTIAL - ATTORNEYS EYES ONLY AND
16              NONCONFIDENTIAL TRANSCRIPT)

17                   January 18, 2019
                       8:56 a.m.
18                   Phoenix, Arizona
          Amy L. Zoller, RMR, CRR, CRC
19

20

21   H+G

22

23   Hunter + Geist, Inc.

24
     303.832.5966    1900 Grant Street, Suite 1025    ▪ www.huntergeist.com
25   800.525.8490    Denver, CO 80203                 ▪ scheduling@huntergeist.com

                     Your Partner in Making the Record

JIM CHRISTOPHERSON - 1/18/2019 - CONTAINS CONFIDENTIAL AND NONCONFIDENTIAL MATERIAL
Cypress Advisors, Inc., et al. v. Kent McCarty Davis, et al.

---

**Page 1**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

```
                                  )
CYPRESS ADVISORS, INC., a Florida )
corporation, d/b/a THE CYPRESS    )
GROUP,                            )
                                  ) Civil Action No.
              Plaintiff,          ) 17-cv-01219-MSK-
v.                                ) KLM
                                  )
KENT MCCARTY DAVIS, an            )
individual,                       )
JIM CHRISTOPHERSON, an            )
individual, and                   )
C SQUARED ADVISORS, LLC, a        )
North Carolina limited liability  )
company,                          )
                                  )
              Defendants.         )
```

VIDEOTAPE DEPOSITION OF JIM CHRISTOPHERSON

(CONFIDENTIAL - ATTORNEYS EYES ONLY AND
NONCONFIDENTIAL TRANSCRIPT)
January 18, 2019
8:56 a.m.
Phoenix, Arizona
Amy L. Zoller, RMR, CRR, CRC

---

**Page 3**

The Videotaped Deposition of JIM CHRISTOPHERSON
was taken on January 18, 2019, commencing at 8:56 a.m.,
at the offices of Glennie Reporting Services, 1555 East
Orangewood Avenue, Phoenix, Arizona, before Amy L.
Zoller, a Certified Reporter, Certificate No. 50911, for
the State of Arizona.

APPEARANCES:
For Plaintiff Cypress Advisors, Inc.:
      FAEGRE BAKER DANIELS, L.L.P.
      BRADFORD E. DEMPSEY, ESQ.
      3200 Wells Fargo Center
      1700 Lincoln Street, Suite 3200
      Denver, Colorado 80202

For Defendant Kent McCarty Davis and C Squared Advisors,
LLC:

      IRELAND STAPLETON PRYOR & PASCOE, P.C.
      MARK E. LACIS, ESQ.
      717 17th Street, Suite 2800
      Denver, Colorado 80202

For Defendant Jim Christopherson:
      FAIRFIELD AND WOODS, P.C.
      SCOTT T. RODGERS, ESQ.
      1801 California Street, Suite 2600
      Denver, Colorado 80202

Also present:
      Michael Noonan, Videographer
      Dean Zuccarello
      Kent McCarty Davis

---

**Page 2**

I N D E X

WITNESS                                              PAGE
JIM CHRISTOPHERSON

      Examination by Mr. Lacis                          5

      Examination by Mr. Dempsey                       147

      Further Examination by Mr. Lacis                 238

      Further Examination by Mr. Dempsey               241


* CONFIDENTIAL - ATTORNEYS EYES ONLY EXCERPT
   Pages 141 through 145



               INDEX TO EXHIBITS

DESCRIPTION                                          PAGE
Exhibit 41   (Attorneys Eyes Only document)          141


* Pursuant to protective order, Confidential - Attorneys
   Eyes Only material is filed under separate cover.

---

**Page 4**

```
            1          THE VIDEOGRAPHER:  We are on the record.
08:58:47    2   Today's date is January 18, 2019, and the time is
08:58:55    3   8:56 a.m.  Here begins Video No. 1 in the deposition of
08:59:00    4   Jim Christopherson -- Christopherson in the matter of
08:59:07    5   Cypress Advisors, Incorporated, vs. Kent Davis, et al.,
08:59:11    6   in the United States District Court for the District of
08:59:14    7   Colorado, Case No. 17-cv-01219-MSK-KLM.
08:59:22    8          Our court reporter is Amy Zoller.  My name
08:59:26    9   is Michael Noonan, certified legal video specialist.  And
08:59:31   10   we are here in association with Hunter + Geist,
08:59:34   11   Incorporated, 1900 Grant Street, Suite 1025, Denver,
08:59:38   12   Colorado.  This deposition is taking place at the offices
08:59:40   13   of Glennie Reporting Services, 1555 East
08:59:44   14   Orangewood Avenue, Phoenix, Arizona.
08:59:47   15          Counsel and all present in the room will now
08:59:49   16   state their appearance and affiliations for the record.
08:59:52   17          MR. LACIS:  Mark Lacis on behalf of the
08:59:55   18   Defendant Kent McCarty Davis and C Squared Advisors.
09:00:01   19          MR. DEMPSEY:  Good morning.  Brad Dempsey,
09:00:04   20   Faegre Baker & Daniels, on behalf of plaintiff, Cypress
09:00:06   21   Advisors, Inc.
09:00:07   22          MR. RODGERS:  Scott Rodgers on behalf of Jim
09:00:10   23   Christopherson.
09:00:13   24          THE VIDEOGRAPHER:  Is that everyone in the
09:00:14   25   room?
```

1 (Pages 1 to 4)

**JIM CHRISTOPHERSON - 1/18/2019 - CONTAINS CONFIDENTIAL AND NONCONFIDENTIAL MATERIAL**
**Cypress Advisors, Inc., et al. v. Kent McCarty Davis, et al.**

---

73

10:50:19   1    saying "understanding," counsel.  I think his testimony
10:50:21   2    was it was an assumption.
10:50:22   3       Q.  And I don't mean --
10:50:24   4           MR. DEMPSEY:  Mischaracterizes testimony.
10:50:26   5       Q.  (BY MR. LACIS:)  I don't -- I don't mean to
10:50:27   6    mischaracterize your -- your testimony.  I'm -- I'm
10:50:29   7    interested in understanding what your personal knowledge
10:50:31   8    is today, what you understood.
10:50:33   9       A.  Yep.
10:50:33  10       Q.  I believe you -- you testified that you assumed
10:50:38  11    that Mr. Davis was a partner, correct?
10:50:40  12       A.  Correct.
10:50:41  13       Q.  And that Mr. Davis told you that he was a
10:50:43  14    partner?
10:50:44  15       A.  Correct.
10:50:44  16       Q.  Okay.  And that Mr. Davis referred to himself
10:50:52  17    as a partner?
10:50:53  18       A.  Correct.
10:50:53  19       Q.  And I understand that you are not privy to the
10:51:05  20    actual, you know, behind-the-scenes ownership stakes.  So
10:51:11  21    I'm just trying to understand what it is that you
10:51:13  22    understood.  Okay?
10:51:15  23       A.  Okay.
10:51:15  24       Q.  So based on that testimony, was it your
10:51:19  25    understanding that Mr. Davis was a partner?

---

74

10:51:23   1           MR. DEMPSEY:  Objection.  Asked and
10:51:26   2    answered, counsel.
10:51:26   3       A.  Based on what I said, yes.
10:51:28   4       Q.  Okay.  And now as to the other independent
10:51:32   5    contractors, did you have a similar understanding what --
10:51:36   6    as to whether or not Mr. Collins was a partner?
10:51:40   7       A.  I had no reason to believe he was a partner.
10:51:43   8       Q.  Okay.  How about Mr. Pabst?
10:51:45   9       A.  No reason to believe he was a partner.
10:51:48  10       Q.  How about Mr. Dillsaver?
10:51:49  11       A.  No reason to believe he was a partner.
10:51:51  12       Q.  And how about Mr. Matthews?
10:51:52  13       A.  No reason to believe he was a partner.
10:51:55  14       Q.  And why do you say you had no reason to believe
10:51:57  15    that those individuals were not partners?
10:52:00  16       A.  They didn't tell me they were partners.  I
10:52:03  17    didn't see anything that said they were partners.  I
10:52:07  18    didn't hear them refer to themselves officially as
10:52:11  19    partners in the company.  I just -- I had no reason to
10:52:14  20    believe it.
10:52:14  21       Q.  Did Mr. Zuccarello refer to Mr. Davis as a
10:52:21  22    partner?
10:52:21  23       A.  Yeah, I think he did in e-mails, in
10:52:30  24    introductions in meetings, that kind of thing.  Yes.
10:52:32  25       Q.  And how about the other individuals we just

---

75

10:52:35   1    talked about, Mr. Collins, Pabst, and Dillsaver, did
10:52:40   2    Mr. Zuccarello refer to them as partners?
10:52:42   3       A.  Not -- not that I recall.
10:52:44   4       Q.  Did Mr. Zuccarello refer to you as a partner?
10:52:46   5       A.  Yes.
10:52:49   6       Q.  When?
10:52:49   7       A.  In the first period of working with Cypress.
10:52:52   8       Q.  So back in 1995 --
10:52:54   9       A.  Correct.
10:52:54  10       Q.  -- through 1998?
10:52:56  11       A.  Correct.
10:52:57  12       Q.  How about subsequently?
10:52:58  13       A.  No.
10:52:59  14       Q.  How were you referred to?
10:53:05  15           MR. DEMPSEY:  Object to form.
10:53:06  16       A.  Official grunt.  I'm not sure if that was on my
10:53:11  17    card or not, but I was referred to as at some time a
10:53:17  18    managing member or a managing director or something like
10:53:20  19    that.  And then I think principal when I left.
10:53:22  20       Q.  How was -- strike that.
10:53:31  21           Are you familiar with Mr. Collins's title?
10:53:35  22       A.  I'm sorry?
10:53:37  23       Q.  Sorry.  Are you familiar with Mr. Collins's
10:53:39  24    title at Cypress?
10:53:40  25       A.  I think he was referred to as a principal.

---

76

10:53:43   1       Q.  How about Mr. Pabst?
10:53:45   2       A.  I think the same.
10:53:46   3       Q.  Mr. Dillsaver?
10:53:47   4       A.  I don't think we referred to him as a principal
10:53:55   5    back then.  I -- maybe we called him a -- I think we
10:53:59   6    called him a director or something like that.
10:54:01   7       Q.  While you were at Cypress, do you know who
10:54:08   8    shared in the profits of Cypress?
10:54:09   9       A.  I -- I wasn't privy to any accounting records,
10:54:14  10    financial records, anything like that.
10:54:15  11       Q.  Do you know who received profit distributions?
10:54:24  12       A.  While I was there, I -- I was not privy to any
10:54:30  13    of that information.  I --
10:54:33  14       Q.  Do you have any understanding of who received
10:54:35  15    profit distributions?
10:54:35  16       A.  While I was there, I didn't have any
10:54:37  17    understanding of it.
10:54:37  18       Q.  And since that time?
10:54:39  19       A.  I've come to understand what I've seen in the
10:54:42  20    document production.
10:54:43  21       Q.  And what is that understanding?
10:54:45  22           MR. DEMPSEY:  Object to form.
10:54:46  23       A.  There are profit distribution schedules and all
10:54:55  24    kinds of stuff that talk about profit distribution or
10:55:00  25    member -- I forget what they're called, but partner

---

19 (Pages 73 to 76)

**JIM CHRISTOPHERSON - 1/18/2019 - CONTAINS CONFIDENTIAL AND NONCONFIDENTIAL MATERIAL**
**Cypress Advisors, Inc., et al. v. Kent McCarty Davis, et al.**

---

77

| | |
|---|---|
| 10:55:04 1 | payouts or -- you've seen them.  There's -- there's a |
| 10:55:09 2 | bunch of stuff in the production. |
| 10:55:11 3 | Q.   And based on -- on that, do you have any |
| 10:55:14 4 | understanding of who received profit distributions? |
| 10:55:17 5 | A.   Well, it looked from those documents like |
| 10:55:19 6 | Mr. Zuccarello and Mr. Davis were receiving them. |
| 10:55:23 7 | Q.   Anybody else? |
| 10:55:24 8 | A.   Not that I saw on those. |
| 10:55:27 9 | Q.   Were you ever entitled to share in any of |
| 10:55:32 10 | Cypress's profits? |
| 10:55:33 11 | A.   Not -- not that I know of.  Owners -- owners |
| 10:55:41 12 | share in profits, right?  I wasn't an owner of Cypress. |
| 10:55:44 13 | Q.   Were you ever responsible for any of Cypress's |
| 10:55:44 14 | operating expenses? |
| 10:55:47 15 | A.   No. |
| 10:55:51 16 | Q.   Why not? |
| 10:55:53 17 | A.   Why would I be? |
| 10:55:58 18 | Q.   Why do you say that? |
| 10:56:02 19 | A.   I -- I was a -- acting as an independent |
| 10:56:05 20 | contractor.  I wasn't responsible for expenses or the |
| 10:56:10 21 | responsibilities of the company I was working for. |
| 10:56:12 22 | Q.   To your knowledge, who was responsible for |
| 10:56:16 23 | Cypress's operating expenses? |
| 10:56:18 24 | A.   Well, I -- Mr. Zuccarello paid them, as far as |
| 10:56:25 25 | I know. |

---

78

| | |
|---|---|
| 10:56:28 1 | Q.   During the time you worked at Cypress, did |
| 10:56:34 2 | anybody else pay Cypress's operating expenses? |
| 10:56:37 3 | MR. DEMPSEY:  Object to form. |
| 10:56:38 4 | A.   I would have no way of knowing that.  You know, |
| 10:56:41 5 | when -- when you say pay, Mr. Zuccarello was doing the |
| 10:56:44 6 | accounting.  So I assume he paid everything.  I don't |
| 10:56:49 7 | think there were multiple checkbooks. |
| 10:56:53 8 | Q.   Are you aware of anybody else being responsible |
| 10:56:56 9 | for Cypress's operating expenses? |
| 10:56:58 10 | A.   I'm not aware of that. |
| 10:57:00 11 | Q.   Have you ever purchased equity in Cypress? |
| 10:57:02 12 | A.   No. |
| 10:57:02 13 | Q.   Have you ever loaned money to Cypress? |
| 10:57:04 14 | A.   I have not. |
| 10:57:05 15 | Q.   Have you ever paid money to Cypress? |
| 10:57:07 16 | A.   No. |
| 10:57:09 17 | Q.   Have you ever made a capital contribution to |
| 10:57:15 18 | Cypress? |
| 10:57:15 19 | A.   I have not. |
| 10:57:16 20 | Q.   Do you have any understanding of who has made |
| 10:57:22 21 | capital contributions to Cypress? |
| 10:57:26 22 | MR. DEMPSEY:  Objection.  Foundation. |
| 10:57:27 23 | A.   Davis had told me previously that he had |
| 10:57:37 24 | covered -- help cover some expenses or something like |
| 10:57:40 25 | that of Cypress.  I don't know if that was a capital call |

---

79

| | |
|---|---|
| 10:57:42 1 | or how that worked between them.  But that's -- that's |
| 10:57:45 2 | the extent of my knowledge. |
| 10:57:47 3 | Q.   When did Mr. Davis tell you this? |
| 10:57:49 4 | A.   I -- I don't recall.  Sometime -- sometime when |
| 10:57:53 5 | I was there the third time. |
| 10:57:55 6 | Q.   Sometime between 2010 and 2014? |
| 10:57:58 7 | A.   Yes. |
| 10:57:58 8 | Q.   Mr. Davis told you that he had paid expenses of |
| 10:58:02 9 | Cypress? |
| 10:58:03 10 | A.   Correct. |
| 10:58:04 11 | Q.   And he had told you that he made capital |
| 10:58:07 12 | contributions to Cypress? |
| 10:58:08 13 | A.   I -- I don't know that -- |
| 10:58:10 14 | MR. DEMPSEY:  Objection.  Leading. |
| 10:58:12 15 | A.   I don't know that he said he made capital |
| 10:58:14 16 | contributions.  I can't remember if he used those words |
| 10:58:17 17 | or not. |
| 10:58:18 18 | Q.   Did you come to some understanding as to what |
| 10:58:20 19 | Mr. Davis paid for? |
| 10:58:21 20 | A.   Only through the documents produced in the |
| 10:58:25 21 | production in this.  There's -- it looks like there were |
| 10:58:32 22 | some -- they called them royalty payments that were |
| 10:58:35 23 | withheld from the commission that he would have earned. |
| 10:58:40 24 | Q.   Okay.  With respect to the conversation that |
| 10:58:44 25 | Mr. Davis had with you during the 2010 to 2014 period, |

---

80

| | |
|---|---|
| 10:58:51 1 | what were the circumstances behind -- strike that. |
| 10:58:55 2 | Why did Mr. Davis tell you, to your knowledge, |
| 10:58:57 3 | that he paid expenses of Cypress?  How did that come up? |
| 10:59:01 4 | A.   I don't -- I don't recall how it came up.  He |
| 10:59:05 5 | just -- I think we were on a -- a sales call on a pitch |
| 10:59:10 6 | somewhere and out at dinner one night, and I think he |
| 10:59:13 7 | brought it up.  Or maybe it was at a show in Las Vegas. |
| 10:59:17 8 | I can't remember. |
| 10:59:17 9 | Q.   What was your reaction to him telling you that |
| 10:59:21 10 | he paid the expenses of Cypress? |
| 10:59:23 11 | A.   I didn't really have much reaction.  I was |
| 10:59:26 12 | like, well, you've told me you're a partner and they |
| 10:59:31 13 | needed money, whatever.  I mean, it's -- it really wasn't |
| 10:59:36 14 | my business. |
| 10:59:37 15 | Q.   It didn't strike you as odd? |
| 10:59:38 16 | A.   No. |
| 10:59:41 17 | MR. DEMPSEY:  Objection.  Leading. |
| 10:59:42 18 | A.   Yeah, not really. |
| 10:59:43 19 | Q.   (BY MR. LACIS)  Are you aware of anybody else |
| 10:59:46 20 | other than Mr. Zuccarello and Mr. Davis paying any |
| 10:59:50 21 | expenses of Cypress? |
| 10:59:51 22 | A.   I am not. |
| 10:59:52 23 | Q.   Did you work with Carty Davis while you were at |
| 11:00:29 24 | Cypress? |
| 11:00:29 25 | A.   Sure. |

---

20 (Pages 77 to 80)

1  STATE OF ARIZONA      )
                         )
2  COUNTY OF MARICOPA    )

3        BE IT KNOWN that I took the foregoing
   deposition pursuant to Notice; that the witness was duly
4  sworn by me; and that said transcript is a full, true,
   and accurate record of the proceedings; that the
5  proceedings were taken down by me in shorthand and
   thereafter reduced to print under my direction; that I
6  have acted in compliance with ACJA 7-206.

7        I CERTIFY that I am in no way related to any of
   the parties hereto nor am I in any way interested in the
8  outcome hereof.

9        Pursuant to request, notification was provided
   that the deposition is available for review and
10 signature.

11       Dated this 28th day of January, 2019.

12

13

14 Amy L. Zoller
   Certified Reporter
15 Arizona CR No. 50911

16

17

18

19

20

21

22

23

24

25