IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 16-cv-01935-PAB-MEH
(Consolidated with Civil Action No. 17-cv-01219-PAB-MEH)

_____

Civil Action No. 16-cv-01935-PAB-MEH

CYPRESS ADVISORS, INC.,

       Plaintiff/Counter Defendant,

v.

KENT MCCARTY DAVIS,

       Defendant/Counter Claimant/Third-Party Plaintiff,

v.

DEAN ZUCCARELLO,

       Third-Party Defendant.

_____

Civil Action No. 17-cv-01219-PAB-MEH

CYPRESS ADVISORS, INC.*,*

       Plaintiff,

v.

KENT MCCARTY DAVIS and
C SQUARED ADVISORS, LLC,

       Defendants.

_____

## ORDER ON DECLARATORY AND EQUITABLE CLAIMS
_____

       The Court presided over a 7-day jury trial in this case, involving various claims

and disputes arising from the termination of a business relationship between Kent

McCarty Davis and Cypress Advisors, Inc. ("Cypress"), an investment banking firm founded by Dean Zuccarello that specializes in fast food franchises.  Specifically, Cypress brought claims for: (1) misappropriation of trade secrets, (2) civil theft, (3) conversion, and (4) false advertising.  *See* Docket No. 214 at 8-11.  Mr. Davis and his competitor to Cypress, C Squared Advisors, LLC, filed claims for: (1) breach of partnership agreement, (2) wrongful disassociation of a partnership, (3) breach of fiduciary duty, (4) breach of contract, (5) constructive fraud, and (6) tortious interference with prospective economic advantage.  Jurisdiction in this case is based on diversity of citizenship.  *See id.* at 2.

The Court dismissed Cypress's claims against C Squared and Mr. Davis for conversion and false advertising on a Rule 50 motion after Cypress's case-in-chief.  Docket No. 303 at 3.  Additionally, after Mr. Davis's case-in-chief, the Court dismissed Mr. Davis's claim against Cypress for wrongful dissociation under Rule 50.  Docket No. 304 at 2.

The jury found for Cypress on the following claims: (1) misappropriation of trade secrets against Mr. Davis with an award of $499,327.00 in damages; (2) misappropriation of trade secrets against C Squared without an award of damages; and (3) civil theft against Mr. Davis with an award of statutory damages of $200.00.  Docket No. 309 at 2.  The jury found for Mr. Davis on one claim, for breach of contract against Cypress, with an award of $280,987.00.  *Id.* at 5.

The jury found against Mr. Davis and C Squared on their remaining claims and counterclaims: (1) breach of partnership against both Cypress and Mr. Zuccarello; (2) breach of fiduciary duty against both Cypress and Mr. Zuccarello; (3) constructive fraud

against both Cypress and Mr. Zuccarello; (4) breach of contract against Mr. Zuccarello; and (5) intentional interference with prospective business relations against both Cypress and Mr. Zuccarello. Docket No. 309 at 2-7.

The parties also sought declaratory judgments at trial, which the parties agreed would be determined by the Court. *See* Docket No. 289; Docket No. 291. The parties broadly seek declaratory judgments regarding the employment relationship between Mr. Davis and Cypress, asking the Court to determine whether Mr. Davis was or was not a partner and any corresponding rights drawing from that relationship. *See* Docket No. 173 at 8, 26. In addition, Mr. Davis brought equitable claims that were tried to the Court: (1) promissory estoppel, (2) wind up and accounting, (3) judicial dissociation,[1] (4) receivership, and (5) unjust enrichment. Docket No. 214 at 26-29.

Therefore, two categories of unresolved claims are addressed in this Order: first, the requested declaratory judgments; second, Mr. Davis's equitable claims.

## I. DECLARATORY JUDGMENT CLAIMS

Cypress seeks declaratory judgments involving Mr. Davis's termination, his employment status, and right to certain proceeds. *See* Docket No. 173 at 8. Mr. Davis seeks similar declaratory judgments, albeit ones that generally request that the Court find that he was a partner with corresponding partnership rights. *Id.* at 26.

### A. Standard of Review

Although Colorado law applies to the substantive issues in this case, the Declaratory Judgment Act governs the standards for granting a declaratory judgment.

---

[1] Judicial dissociation is a remedy involving dissociation of a partnership by the Court. *See* Colo. Rev. Stat. § 7-64-602(b)(II); Colo. Rev. Stat. § 7-64-601(1)(e).

*See, e.g.*, *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 982-83 (10th Cir. 1994) (applying federal declaratory judgment standards in diversity case).

The Declaratory Judgment Act provides that, "in a case of actual controversy within its jurisdiction . . ., any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The Act creates two separate requirements that parties seeking a declaratory judgment must meet. *Surefoot LC v. Sure Foot Corp.*, 531 F.3d 1236, 1240 (10th Cir. 2008). First, there must be an "actual controversy" at issue. *Id.* (noting that the "actual controversy" requirement is tied to the case-or-controversy requirement of Article III of the United States Constitution). An actual controversy must exist at the time "the district court issues its declaratory judgment"; it is not enough that there was an actual controversy at the time suit was filed. *Columbian Fin. Corp. v. BancInsure, Inc.*, 650 F.3d 1372, 1381 (10th Cir. 2011). "The crucial question . . . is whether granting a present determination of the issues offered will have some effect in the real world." *Id.* at 1382 (citations and alterations omitted).

Once a district court satisfies itself that an "actual controversy" exists, a court then turns to the second requirement under the Declaratory Judgment Act. This step embraces the permissive language of the Act – that a district court "*may* declare the rights and other legal relations." 28 U.S.C. § 2201(a) (emphasis added). A district court must consider several case-specific factors, called the *Mhoon* factors, when deciding whether to exercise its authority to issue a declaratory judgment. *See*

4

*Surefoot*, 531 F.3d at 1240. These various "equitable, prudential, and policy arguments" weigh on the court's discretionary decision to either entertain or dismiss a request for a declaratory judgment. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 136 (2007).

Because claims have already been tried to the jury, the Court is bound to apply the factual findings of the jury in resolving the parties' declaratory judgments. *See Ag Servs. of Am., Inc. v. Nielsen*, 231 F.3d 726, 730-31 (10th Cir. 2000) ("[W]hen a case involves both a jury trial and a bench trial . . the court is bound by the jury's determination of factual issues common to both the legal and equitable claims."); *see also AstenJohnson, Inc. v. Columbia Cas. Co.*, 562 F.3d 213, 228 (3d Cir. 2009) ("When litigation involves both legal and equitable claims . . . the right to a jury trial on the legal claim, including all issues common to both claims, must be preserved by . . . accepting the jury's findings on common facts for all purposes." (citations omitted)). The Court "must consider what findings are explicit or necessarily implied by the verdict, including examining alternative bases by which the jury could have reached its conclusion." *See Ag Services*, 231 F.3d at 731.

### B. Cypress's Requested Declaratory Judgments

Cypress requests the following declarations:

1) Davis provided services to Cypress as an independent contractor; (2) the relationship between Davis and Cypress terminated on June 30, 2016; (3) the "Solicitation and Engagement Agreement" by which Davis agreed to adhere is a valid and enforceable contract; (4) Cypress has all right, title and interest in its engagement agreements with its clients; (5) Davis is not a party to Cypress's engagement agreements with ZAK, R&R, RMA, e-Lanes, and other Highlighted Cypress Engagements (as described in the Amended Complaint); (6) Davis is not entitled to any fees collected by

Cypress after June 30, 2016; and (7) any continued work by Davis on Cypress's exclusive engagements and any communications by Davis with Cypress's clients on such exclusive engagements constitute tortious interference with Cypress's contractual relationships with its clients.

Docket No. 173 at 8. In resolving Cypress's requested declarations, the Court must apply any explicit or implicit findings of the jury relevant to those claims.

Mr. Davis's argument at trial was that Cypress treated him as a partner in all material aspects. He produced evidence and testimony that he was often called a "partner" in communications with clients and that he led his own deals. Additionally, he earned some revenue from deals that others led. Cypress argued that various agreements over time between it and Mr. Davis showed that Mr. Davis was not a partner, and that Mr. Davis's distributions from clients that were not his were contingent on Mr. Zuccarello's approval and Mr. Davis's continued ability to produce high revenue.

Alternatively to his partnership claim, Mr. Davis argued that he had a contract with Cypress for a set amount of profits per deal and that Cypress's termination of Mr. Davis without compensation for yet-to-close deals breached that contract. Cypress argued that shared profits were contingent and the percentages set per deal, not based on a global policy or contract. After presented with evidence and arguments based on these theories, the jury reached the following verdicts: (1) Cypress breached its contract with Mr. Davis, Docket No. 309 at 5; and (2) there was no partnership between Mr. Davis, Mr. Zuccarello, and Cypress.[2] *Id.* at 2. Because the jury concluded that there

---

[2] The verdict form asked the jury the following questions. First, "Has Mr. Davis proved, by a preponderance of the evidence, that a partnership existed between Mr. Davis, Dean Zuccarello, and Cypress Advisors, Inc.?" *Id.* at 2. The jury responded "no." Second, "Has Mr. Davis proved, by a preponderance of the evidence, his claim of breach of contract against Cypress Advisors, Inc." *Id.* at 5. The jury responded "yes."

was no partnership, Mr. Davis's claims for breach of partnership agreement, breach of fiduciary duty, and constructive fraud failed. *Id.* at 3-5.

The Court will address Cypress's requested declarations as listed in the final pretrial order. *See* Docket No. 173 at 8.

### 1. "Davis provided services to Cypress as an independent contractor"

Cypress's first requested declaration is that Mr. Davis provided his services as an independent contractor. *Id.* The central dispute at trial regarding Mr. Davis's employment status with Cypress was whether he was a partner, with corresponding partnership rights, or an independent contractor, such that he was not entitled to distributions from various ongoing deals and could be terminated without regard to the procedures for dissolving a partnership. The jury found that there was no partnership. Docket No. 309 at 2. The jury also found that, while Mr. Davis was not a partner and there was no partnership, Mr. Davis did have a contract with Cypress, which Cypress breached, resulting in a damages award to Mr. Davis. *Id.* at 5. The jury, however, did not make an explicit or implicit finding regarding what type of employment relationship Mr. Davis had with Cypress, other than to conclude he was not a partner. For example, the jury did not find that he was an independent contractor versus an employee, with whatever benefits an employee might have. Thus, in resolving Cypress's first requested declaration, the Court is bound by the jury's finding that there was no partnership and Mr. Davis was not a partner.

_____

*Id.*

To grant a declaratory judgment, there must be an actual controversy between the parties. "The crucial question . . . is whether granting a present determination of the issues offered will have some effect in the real world." *Columbian Financial*, 650 F.3d at 1382 (citations and alterations omitted). In other words, the Court must determine whether resolution of the issue will have a "coercive effect on the legal rights or obligations of either party." *Prier v. Steed*, 456 F.3d 1209, 1214 (10th Cir. 2006). Neither Mr. Davis nor Cypress raised or argued any issues regarding overtime, health insurance, or any other dispute that might arise when a party seeks a determination that it was or was not an employee or independent contractor. *See, e.g.*, *Acosta v. Jani-King of Okla., Inc.*, 905 F.3d 1156, 1159 (10th Cir. 2018) (analyzing whether janitors were employees with minimum wage and overtime protections). While Cypress did argue that Mr. Davis was an independent contractor, that argument was a direct response to Mr. Davis's claim to be a partner; Cypress did not otherwise raise the issue. The jury agreed with Cypress that Mr. Davis was not a partner, and the Court is bound by that determination. A declaration narrowing Mr. Davis's status from "not a partner" to "independent contractor" would not resolve an actual controversy between the parties. Thus, resolution of this requested declaration would have no effect "in the real world." *Columbian Financial*, 650 F.3d at 1382 (citations and alterations omitted).

However, even if there were an actual controversy, courts must consider whether there are "equitable, prudential, [or] policy" reasons for declining jurisdiction. *Surefoot*, 531 F.3d at 1248. As relevant here, the Court should consider "(1) whether a declaratory action would settle the controversy; (2) whether it would serve a useful

purpose in clarifying the legal relations at issue . . .; and [(3)] whether there is an alternative remedy which is better or more effective."[3]  *Id.* (quoting *Mhoon*, 31 F.3d at 983).  However, these factors are typically applied when there is "parallel litigation in state and federal courts."  *TBL*, 285 F. Supp. 3d at 1195 (collecting cases).  When there is no parallel state action, courts may decline jurisdiction over a declaratory judgment "where a plaintiff seeks declaratory relief that would resolve the same issues raised by other claims brought in the same action."  *See id.*  This is either because (1) using the *Mhoon* factors, the declaratory judgment will serve no useful purpose when it addresses issues resolved by other claims in the action or (2) regardless of the *Mhoon* factors, when the damage has already occurred, there is no "forward-looking need" to address liability when a regular claim, like breach of contract, would resolve the dispute.  *See id.* (citation and quotations omitted).  Under either approach, the Court finds that jurisdiction over Cypress's first declaration is inappropriate.

Applying the first *Mhoon* factor, the Court finds that a declaration would not settle the controversy.  Issuing a declaration that Mr. Davis is an independent contractor would do nothing to resolve the partnership dispute.  There was no evidence at trial that Mr. Davis's compensation turned on whether he was considered an independent contractor or an employee.  Rather, it turned on whether he was a partner, with rights to partnership distributions, or some other employment relationship such that he did not have a right to those distributions or the assets of the alleged partnership.  While

---

[3] The other two factors, whether the declaratory judgment is used for procedural fencing or would create friction between federal and state courts, are inapplicable when there is no corresponding state action.  *See, e.g.*, *TBL Collectibles, Inc. v. Owners Ins. Co.*, 285 F. Supp. 3d 1170, 1196 & n.6 (D. Colo. 2018).

Cypress argued at trial and introduced evidence that Mr. Davis was an independent contractor, as noted above, those arguments and evidence specifically went toward refuting Mr. Davis's claim that he was a partner; Cypress did not argue that Mr. Davis was not an "employee," with corresponding rights as an employee, and Mr. Davis did not make that claim, either. Declaring that Mr. Davis was or was not an independent contractor would not serve to settle the dispute. Thus, this factor weighs in favor of declining jurisdiction.

Second, the Court finds that declaring Mr. Davis an independent contractor would serve no useful purpose in clarifying the legal relations at issue because this is not a case where independent contractor or employee status is relevant to the dispute. The Court is bound to apply the jury's finding that there was no partnership, and it is Mr. Davis status, or non-status, as a partner that is integral to the employment relationship here. Any further designation beyond "not partner" does nothing to clarify Mr. Davis's relationship with Cypress or his right to compensation. As a result, this factor weighs in favor of declining jurisdiction.

Third, the more complete and adequate remedy is the one that already occurred: the jury's conclusion that Mr. Davis is not a partner and the resulting failure of Mr. Davis's partnership-related claims. A declaration that Mr. Davis is an independent contractor would do nothing to change this outcome and would provide neither Mr. Davis nor Mr. Zuccarello with any relief or remedy that he has not already received from the jury. Thus, all three factors weigh in favor of declining jurisdiction.

Therefore, the Court declines to exercise jurisdiction over Cypress's first declaration.

## 2. "The relationship between Davis and Cypress terminated on June 30, 2016"

Cypress's second request is a declaration that Mr. Davis's employment relationship terminated on June 30, 2016. Docket No. 173 at 8. At trial, Cypress and Mr. Davis provided testimony and documentary evidence regarding Mr. Davis's termination. *See* Exh. 79. Mr. Zuccarello purported to terminate Mr. Davis on June 30, 2016. *Id.* The jury, however, did not make a finding regarding the date on which Mr. Davis was terminated. Rather, the jury concluded that Cypress breached its contract with Mr. Davis, but there was no conclusion that the breach occurred on June 30, 2016 or on any particular date. Thus, to the extent it is relevant, the Court is bound by the jury's conclusion that Cypress breached its contract and that Mr. Davis was not a partner.

Like Cypress's first declaration, it is unclear that the issuance of a declaration regarding Mr. Davis's termination date would have any effect in the real world or have a coercive effect on the legal rights between the parties. *See Columbian Financial*, 650 F.3d at 1382 (citations and alterations omitted); *Prier*, 456 F.3d at 1214. First, there was no dispute regarding this date during trial. The issue at trial was whether the termination was valid and whether the termination prevented Mr. Davis from collecting his commission on yet-to-close deals. While the exact date of Mr. Davis's termination might have presented an actual controversy pre-trial – because it could have limited the scope of his compensation – it is irrelevant given the jury's consideration of post-June 30, 2016 compensation and its damages award to Mr. Davis for Cypress's breach of contract.

Even so, the Court would decline to exercise jurisdiction. Regarding the first *Mhoon* factor, whether a declaration would settle the controversy, 31 F.3d at 983, the Court finds that it would not. Rather, it would only further complicate the controversy given the jury's consideration of compensation past June 30, 2016. The importance of June 30, 2016 was to determine the bounds of Mr. Davis's potential damages. The jury heard evidence of Mr. Davis's alleged claim to compensation past June 30, 2016 and awarded him damages through its verdict. Although the verdict does not specifically state the time period for Mr. Davis's damages, the jury had the opportunity to consider that time period in reaching Mr. Davis's damages award. Having fully litigated the issue of Mr. Davis's compensation at trial, a declaration as to the date of his termination would do nothing to settle a controversy that the jury already settled through its damages award.

Second, the Court finds that a declaration would serve no useful purpose in clarifying the legal relationship between the parties. *See id.* The Court is bound by the determination that there was no partnership and that Cypress breached its contract with Mr. Davis; adding a date to the termination of the employment relationship would add no more clarity. The central legal relation at issue in this case was Mr. Davis's employment status, which has been resolved by the jury. There is no reason to believe that declaring a June 30, 2016 termination would serve any useful purpose in further defining the relationship.

Finally, a declaration regarding the termination date is not an adequate or complete remedy. *See id.*; *TBL*, 285 F. Supp. 3d at 1196-97. At this juncture, the termination date would provide neither Mr. Davis nor Cypress and Mr. Zuccarello any

relief. *Cf. TBL*, 285 F. Supp. 3d at 1196-97. The full remedy is the determination of Mr. Davis's employment status and resulting rights and compensation; a remedy already completed by the jury. Thus, pursuant to the *Mhoon* factors, jurisdiction is inappropriate over Cypress's second declaration.

As a result, the Court declines jurisdiction over Cypress's second request for declaratory relief.

### 3. "The 'Solicitation and Engagement Agreement' by which Davis agreed to adhere is a valid and enforceable contract"

Third, Cypress requests a declaration that the "Solicitation and Engagement Agreement" that Mr. Davis allegedly agreed to is an enforceable contract. Docket No. 173 at 8. The parties presented evidence of various agreements that purported to govern the relationship between Cypress and Mr. Davis. *See* Exh. A-2; Exh. 162. Although the jury concluded that Cypress breached its contract with Mr. Davis, the jury did not specifically determine Mr. Davis agreed to and was bound by the Solicitation and Engagement Agreement, or that any of the purported contracts introduced into evidence, *see id.*, were the contracts that Cypress breached. Thus, although the Court is bound by the jury's conclusion regarding the partnership and a breach of contract as a general matter, there is no implicit finding regarding the Solicitation and Engagement Agreement.

Again, it is unclear that a declaration regarding the Solicitation and Engagement Agreement would have any effect in the real world or coercive legal effect on the parties. *See Columbian Financial*, 650 F.3d at 1382 (citations omitted); *Prier*, 456 F.3d at 1214. The jury concluded that Cypress breached its contract with Mr. Davis and

Cypress owes Mr. Davis damages for that breach. A declaration that the Solicitation and Engagement Agreement is enforceable would have no real world effect on this conclusion or have coercive legal effect on the rights or obligations of either party, particularly because it is unclear what relief Cypress or Mr. Davis might still be entitled to assuming this was an enforceable agreement. As a result, there does not appear to be an active controversy between the parties.

Nevertheless, assuming there was an active controversy, the Court would decline jurisdiction. A declaration regarding the Solicitation and Engagement Agreement would not settle the controversy or serve a useful purpose in clarifying the legal relationship between the parties because the central dispute – Mr. Davis's status as a partner and any potential breach of contract if he is not a partner – has been settled by the jury, and a declaration on the Solicitation and Engagement Agreement would do nothing to clarify the legal relationship of the parties beyond the primary concern of Mr Davis's partnership status. *See Mhoon*, 31 F.3d at 983. Additionally, a declaration regarding this agreement does not provide a full or adequate remedy, particularly because the jury agreed with Cypress's theory that Mr. Davis was not a partner and found that Cypress breached its contract with Mr. Davis. It is unclear what remedy a declaration on this agreement could provide. As a result, the *Mhoon* factors weigh in favor of declining jurisdiction over the case.

Therefore, the Court declines jurisdiction over Cypress's third declaration.[4]

---

[4] The Court would decline jurisdiction over declarations one, two, and three for a different reason, were *Mhoon* not to apply. The purpose of a declaratory judgment is to "enable[] parties uncertain of their legal rights to seek a declaration of rights prior to injury." *Kunkel v. Cont'l Cas. Co.*, 866 F.2d 1269, 1274 (10th Cir. 1989). "That purpose

### 4. "Cypress has all right, title and interest in its engagement agreements with its clients"

Fourth, Cypress requests a declaration that it has all right and title to its engagement agreements with its clients. Docket No. 173 at 8. As demonstrated by testimony and evidence at trial, Cypress requires its clients to sign an engagement agreement before providing services to that client. *See* Exh. 13; Exh. 216. These engagement agreements provide the terms of Cypress's work, including the scope of the project and compensation. *See id.* While Mr. Zuccarello and Mr. Davis both sometimes signed the engagement agreements, the Court finds that the agreements were for work by Cypress, not by any particular employee, even though a deal would usually be spearheaded by a particular Cypress employee. *See* Exh. 13 at 1 (stating that the agreement is between Cypress Consulting Group, Inc. and R&R Ventures, Inc.); Exh. 216 at 3, 19 (stating that the agreement was made between Cypress International, Inc., doing business as the Cypress Group, and Wendy's International, LLC). In concluding that there was no partnership, the jury implicitly found that Mr.

is not served where . . . the injury has already occurred and the declaratory judgment claim merely seeks relief that . . . [was] afforded by the resolution" of the other claims in the case. *See TBL*, 285 F. Supp. 3d at 1197 (citing *PDX Pro Co., Inc. v. Dish Network, LLC*, No. 12-cv-01699-RBJ, 2013 WL 3296539, at *2 (D. Colo. July 1, 2013)). For declaration one, because Mr. Davis's termination from Cypress and Cypress's withholding of compensation already occurred and the relief from those actions was already addressed by the jury verdict, there is no "forward-looking need" to declare Mr. Davis an independent contractor. *Cf. id.* at 1195-97. As to declaration two, Mr. Davis's termination already occurred, the jury trial claims already contemplate the relief available from a declaration. And, regarding declaration three, any alleged breach of the Solicitation and Engagement Agreement by either Cypress or Mr. Davis already occurred, other claims in the action already provided relief, and the purpose of a declaratory judgment is not served where a declaration does not determine legal rights "prior to injury." *Cf. Kunkel*, 866 F.2d at 1274; *see also TBL*, 285 F. Supp. 3d at 1197.

Davis did not have any ownership rights in the engagements because, without a partnership, there are not partnership assets from which Mr. Davis could have a claim over the engagement agreements. Moreover, given the evidence before the jury that client work was entered into on behalf of Cypress for work done by Cypress, the jury's verdict that there was no partnership agreement implicitly concludes that Mr. Davis could not have any right or title to the engagement agreements. Mr. Davis argued that he had a right to the proceeds from the engagement agreements because he was a partner, not because he had any other property interest in them. Accordingly, the Court is bound by the jury's implicit conclusion that Mr. Davis did not have any right to the engagement agreements.

Given that the jury implicitly found Mr. Davis did not have any right or title to the engagement agreements, a declaration stating that Cypress has right and title to them would have no practical effect. Such a declaration would not affect the rights or obligations of any of the parties because the dispute has already been resolved by the jury's verdict that Mr. Davis was not a partner. *See Columbian Financial*, 650 F.3d at 1381 (citations omitted); *Prier*, 456 F.3d at 1214. Without an alternative theory other than the existence of a partnership from which Mr. Davis could claim any right to the engagement agreements, there is no controversy.

However, even assuming there was an actual controversy, the Court would decline exercising jurisdiction over this declaration for the same reasons it declined it for the others: (1) a declaration would not settle the controversy because a declaration on this issue would not settle the primary dispute between the parties, Mr. Davis's partnership status, which was resolved by the jury; (2) a declaration would not clarify

the legal relationship because Mr. Davis's status as a partner was his only theory for having a property interest in the engagement agreements; and (3) a declaration would not provide an adequate remedy compared to the remedy provided at trial.[5]  As a result, the Court declines jurisdiction over Cypress's fourth declaration.

### 5.  "Davis is not a party to Cypress's engagement agreements with ZAK, R&R, RMA, e-Lanes, and other Highlighted Cypress Engagements (as described in the Amended Complaint)"

Fifth, and related to the fourth declaration, Cypress requests a declaration that Mr. Davis is not a party to engagement agreements with certain clients.  At trial, the jury heard evidence that, although Mr. Davis had worked on these deals prior to his departure from Cypress, they had not yet closed.  The jury also heard testimony from Mr. Zuccarello that, while Mr. Davis signed certain agreements, *see* Exh. 216 at 6 (containing both Mr. Davis and Mr. Zuccarello's signature), it was irregular for Mr. Davis to be the only signatory of engagement agreements on behalf of Cypress.  Moreover, the jury heard testimony that, even if both Mr. Davis and Mr. Zuccarello signed an agreement, or only Mr. Davis, the agreement was still for work by Cypress, not any particular individual.  *See id.* at 19 (stating that the agreement is between Wendy's International, LLC and Cypress Advisors, Inc.).  Mr. Davis's argument regarding his

---

[5] The alternative basis for declining jurisdiction is not necessarily applicable for this declaration.  It is unclear what injury Cypress is trying to prevent through this declaration such that its rights would be determined "prior to injury."  *Kunkel*, 866 F.2d at 1274.  If Cypress is trying to prevent Mr. Davis from contacting or working with Cypress clients, that issue is addressed in Cypress's sixth declaration.  However, if Cypress was hoping to stave off any claim by Mr. Davis toward the proceeds of Cypress's work with certain Cypress clients, that injury already occurred, and was resolved by the jury's findings of no partnership and breach of contract, making a declaration inappropriate because the injury already occurred and relief was available through the trial claims.  *See id.*; *see also TBL*, 285 F. Supp. 3d at 1197.

contract with Cypress was that he was entitled to compensation for deals that closed after his departure, like the deals listed in Cypress's fifth requested declaration. *See* Exh. 231 at 2 (noting that Zak, eLanes, and RMA were "current active deals"). Thus, Mr. Davis's entitlement to fees from the engagements in Cypress's fifth requested declaration was considered by the jury when it awarded Mr. Davis breach of contract damages. The Court is bound by the jury's consideration of these deals and its awarding of damages.

Because Mr. Davis's damages claim included amounts from these deals, there is no actual controversy between the parties. A declaration that Mr. Davis is a party to these engagements would have no impact in the real world or have coercive legal effect on the rights or obligations of the parties because Mr. Davis's theory of damages during trial involved these engagements and the jury awarded him damages. The Court is bound to apply the jury's verdict on this issue. As a result, there is no active controversy between the parties as to Cypress's fifth requested declaration.

### 6. "Davis is not entitled to any fees collected by Cypress after June 30, 2016"

Sixth, Cypress requests a declaration that Mr. Davis is not entitled to any fees earned after June 30, 2016. Docket No. 173 at 8. At trial, the jury heard testimony regarding Mr. Davis's work on yet-to-close deals and Mr. Davis's and Mr. Zuccarello's attempt to work out a termination agreement as to those deals. *See* Exh. 231. Mr. Davis made two alternative arguments at trial. First, that he was a partner which, if he was, would have entitled him to share in the profits of the partnership, including those after his purported termination and prior to dissolution of the partnership. Second, that,

even if he was not a partner, he had a contract with Cypress that entitled him to a set amount of profits for each deal, including deals that he worked on but had not yet closed as of his termination on June 30, 2016. The jury determined that Mr. Davis was not a partner. *See* Docket No. 309 at 2. As a result, any claims based on partnership rights necessarily failed. However, after hearing testimony and seeing evidence regarding Mr. Davis's contract with Cypress, deals he had worked on, deals that had not yet closed, and the potential commission resulting from deals Mr. Davis had not yet been paid for, the jury found that Cypress breached its contract with Mr. Davis and awarded him damages. *Id.* at 5. Because Mr. Davis's contract theory was that he was entitled to compensation for deals that closed beyond June 30, 2016 as a result of his contract, the amount of Mr. Davis's damages and the source of those damages was squarely before the jury. As a result, the jury necessarily considered post-June 30, 2016 commissions and the Court is bound by the jury's consideration of Mr. Davis's entitlement to fees post June 30, 2016.

Because Mr. Davis's damages claim included post-June 30, 2016 amounts, there is no actual controversy between the parties. A declaration that Mr. Davis is in fact entitled to fees post June 30, 2016 would have no effect in the real world or have coercive legal effect on the rights or obligations of the parties because Mr. Davis presented his theory of damages, including entitlement to fees post June 30, 2016, during trial, and was awarded damages. Moreover, the Court is bound to apply the jury's verdict on this issue. As a result, there is no active controversy between the parties.

**7. "Any continued work by Davis on Cypress's exclusive engagements and any communications by Davis with Cypress's clients on such exclusive engagements constitute tortious interference with Cypress's contractual relationships with its clients"**

Seventh, Cypress requests a declaration that any continued work by Mr. Davis on Cypress deals or communication with Cypress clients constitutes tortious interference with contractual relations. Docket No. 309 at 5. Although the jury resolved the issue of Cypress and Mr. Zuccarello's alleged tortious interference, *id.* at 6, the jury had no occasion to address Mr. Davis's tortious interference. Nothing about the jury's findings as to any of the claims bears on whether Mr. Davis's contact or work with Cypress clients constitutes tortious interference.

Under Colorado law, a claim for tortious interference with a contract has five elements: (1) the existence of a contract between Cypress and a third party; (2) knowledge of that contract by Mr. Davis; (3) Mr. Davis's intentional, improper interference with the contract; (4) breach of the contract by the third party; and (5) damages. *Westfield Dev. Co. v. Rifle Inv. Assoc.*, 786 P.2d 1112, 1117 (Colo. 1990) (citing Restatement (Second) of Torts § 766A (Am. Law. Inst. 1979)). Notably, not all intentional interference is actionable. The interference must be improper. *Id.* As applicable here, Colorado law states that interference will not be improper if "(a) the relation concerns a matter involved in the competition between the actor and the other[][;] (b) the actor does not employ wrongful means[][;] (c) his action does not create or continue an unlawful restraint of trade[;] and (d) his purpose is at least in part to advance his interest in competing with the other." *Mem'l Gardens, Inc. v. Olympian Sales & Mgmt. Consultants, Inc.*, 690 P.3d 207, 210-11 (Colo. 1984).

20

Cypress's requested declaration is broad, asking the Court to declare that "any continued work by Davis on Cypress's exclusive engagements and any communications by Davis with Cypress's clients on such exclusive engagements constitute tortious interference with Cypress's contractual relationships with its clients." Docket No. 173 at 8. The elements of tortious interference do not prevent "any communication" or "continued work" with Cypress's clients. Rather, there must be some sort of intentional and improper interference that induces one of Cypress's clients to breach its contract with Cypress. *See Memorial Gardens*, 690 P.2d at 210-11.

It is impossible to know at this juncture whether a particular contact with a former or current Cypress client or work with that client would amount to tortious interference. The contact or work would need to fall within the purview of section 768 of the Second Restatement on Torts, which defines what types of interference are improper, *see id.*, and not every action Mr. Davis might take will be considered improper. Moreover, the type of contract Cypress has with its clients will determine whether interference can be improper at all. *Id.* at 211 ("If . . . the contract is not terminable at will . . . the interests of the parties to the contract outweigh the interests in competition." (citation omitted)). It stretches the claim of tortious interference of contract to say that all contact and any work would constitute behavior contemplated by the cause of action. Here, it is clear that there is no actual controversy between the parties. *MedImmune* notes that an actual controversy exists when the "dispute [is] definite and concrete" and does not result in "an opinion advising what the law would be upon a hypothetical state of facts." 549 U.S. at 127. Thus, without any factual development or specific instances of Mr. Davis's behavior, Cypress's requested declaration relies on "a hypothetical state of

21

facts" that would result in an advisory opinion. *MedImmune*, 549 U.S. at 127. "The concurrence of these contingent events, necessary for injury to be realized, is too speculative to warrant judicial determinations." *Columbian Financial*, 650 F.3d at 1380. As a result, there is no actual controversy between the parties and the Court does not have jurisdiction over Cypress's seventh declaration.

## C.  Mr. Davis's Requested Declarations

Mr. Davis requests the following declarations:

(1) the Cypress Partnership exists as a partnership between Davis and Zuccarello; (2) the Cypress Partnership was not at-will but was for the particular undertaking of completing pending engagements and developing additional client engagements based on a reputation of success built over many years; (3) Zuccarello wrongfully terminated Davis and wrongfully purported to unilaterally terminate the Cypress Partnership on June 30, 2016; (4) the Cypress Partnership must be equitably wound-up in accordance with governing law; (5) Zuccarello and Cypress Advisors—as the parties who breached the partnership agreement—are not entitled to carry on business under the Cypress Group tradename; and (6) all of clients previously serviced by the parties through the Cypress Group, Cypress Advisors, or any variation thereof which constitutes the Cypress Partnership, are free to contact any of the parties and the parties are free to compete for their current and future business needs.

Docket No. 173 at 26.  Like Cypress's requested declarations, the Court must apply any explicit or implicit findings of the jury in resolving Mr. Davis's requested declarations. *See Ag Services*, 231 F.3d at 730-31.  As relevant to Mr. Davis's requested declarations, the jury found that there was no partnership between Mr. Davis, Mr. Zuccarello, and Cypress.  Docket No. 309 at 2.  Because the jury concluded that there was no partnership, Mr. Davis's claims for breach of partnership agreement, breach of fiduciary duty, and constructive fraud failed. *Id.* at 3-5.

### 1. Declarations One through Five

Mr. Davis's first five requested declarations all depend upon the existence of a partnership.  Mr. Davis requests that the Court declare that a partnership existed and, because of that partnership, Mr. Davis is entitled to certain rights as a partner.  *See* Docket No. 173 at 26.  However, the jury found that there was no partnership, Docket No. 309 at 2, foreclosing Mr. Davis's first (existence of a partnership) and second (partnership for a particular undertaking) declarations.  Additionally, the jury's conclusion that there was no partnership also forecloses any declaration that requires the existence of a partnership.  Thus, the jury's verdict also resolved the remaining declarations: (1) wrongful termination of the partnership (declaration three), (2) equitable wind up of the partnership (declaration four), and (3) partnership trade name that Mr. Davis would have a right to (declaration five).  Because there is no partnership, and the Court is bound by that conclusion, there is no actual controversy between the parties as to these five declarations.

### 2. "All of clients previously serviced by the parties through the Cypress Group, Cypress Advisors, or any variation thereof which constitutes the Cypress Partnership, are free to contact any of the parties and the parties are free to compete for their current and future business needs."

The jury did not explicitly or implicitly make any findings regarding Mr. Davis's sixth requested declaration.  Mr. Davis's employment status, partner or not partner, does not implicate either Mr. Davis's ability to compete for previous Cypress clients or Cypress's clients' ability to contact Mr. Davis.

First, the Court finds that there is an actual controversy between the parties.  A declaration in either direction would have an effect in the real world because it would either prevent or allow Mr. Davis to compete for and interact with Cypress clients, and Cypress clients to do the same.  Additionally, a declaration would have coercive legal effect on Mr. Davis's rights or obligations because it would either give him the right to compete for clients or obligate him to not do so.

Once there is an actual controversy between the parties, courts must consider whether it should exercise or decline jurisdiction.  The Court finds that none of the relevant factors favor declining jurisdiction.

As to the first and second factors, whether a declaration would settle the controversy and clarify the legal relationship between the parties, *Mhoon*, 31 F.3d at 983, a declaratory judgment regarding Mr. Davis's ability to compete for Cypress clients and Cypress clients' ability to contact Mr. Davis would settle the remaining question left by the jury trial – what is Mr. Davis's relationship to Cypress's previous clients if he is not a partner and no longer works for Cypress?  Specifically, it would settle what actions Mr. Davis is legally allowed to take with respect to those clients and clarify his legal relationship to those clients and Cypress.  Finally, the Court finds that there is no better remedy available than declaring Mr. Davis's post-Cypress employment rights.  First, this declaration is unlike the previous ones in that, while those declarations had an adequate remedy through the jury trial claims, the trial did nothing to resolve this issue.  Second, waiting for Mr. Davis to be sued for attempting to compete with Cypress is not

the most efficient means of addressing the relationship between the parties post trial. As a result, the Court exercises jurisdiction over Mr. Davis's sixth declaration.[6]

There is no evidence that Mr. Davis signed any sort of non-compete agreement that would prohibit him from contacting Cypress clients. *See, e.g.*, Exh. 231 (stating in an email regarding Mr. Davis's departure that Mr. Davis would be permitted to contact and work with certain clients). Moreover, the jury found that the parties owed no partnership duties to each other when it concluded that there was no partnership. Docket No. 309 at 2-5. Given the lack of evidence regarding a non-compete agreement, and the lack of fiduciary duties, there is no basis for preventing Mr. Davis from contacting Cypress clients or competing for their business. The Court does not have the authority to generally bar a business competitor from competing in the marketplace, or from preventing Cypress's clients from contacting Mr. Davis. *Cf.* Restatement (Second) of Torts, § 768 cmt. a (Am. Law. Inst. 1979) ("If one party is seeking to acquire a prospective contractual relation, the other can seek to acquire it too.").

## II. EQUITABLE CLAIMS

As previously stated, when equitable and legal claims with common issues are joined in one action, the legal claims must be tried first so that the right to a jury trial for those claims is not lost through principles of "res judicata or collateral estoppel." *See Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 550 (1990) (quoting *Parklane Hosiery Co.*

---

[6] The alternative basis for declining jurisdiction is not relevant for Mr. Davis's sixth declaration. A declaration on Mr. Davis's ability to compete would provide relief "prior to injury," and none of the trial claims contemplated such an outcome or concern. *See Kunkel*, 866 F.2d at 1274; *see also TBL*, 285 F. Supp. 3d at 1197.

*v. Shore*, 439 U.S. 322, 334 (1979)); *see also id.* at 547 ("[A] court's determinations of issues in an equitable action could collaterally estop relitigation of the same issues in a subsequent legal action." (citing *Parklane Hosiery*, 439 U.S. at 333)). Thus, like the declarations, the Court must apply common factual findings of the jury in resolving the equitable claims.

Mr. Davis brought the following equitable claims: (1) promissory estoppel, (2) partnership wind up, (3) partnership accounting, (4) judicial dissociation, (5) receivership, and (6) unjust enrichment. Docket No. 214 at 26-29. Mr. Davis's equitable claims were left for consideration until after the jury resolved the legal claims. *See Lytle*, 494 U.S. at 550 (noting that legal claims must be tried to the jury before a court can resolve equitable claims). The Court finds that, accepting the jury's findings on all common issues, Mr. Davis's claims have already been resolved. The jury found for Mr. Davis on his claim on breach of contract, Docket No. 309 at 5, which forecloses the alternative theories of promissory estoppel and unjust enrichment. *See Pinnacol Assurance v. Hoff*, 375 P.3d 1214, 1220 (Colo. 2016) ("Promissory estoppel . . . provides a remedy for a party who relied on a promise made by another party, even though the promise was not contained in an enforceable contract."); *Lewis v. Lewis*, 189 P.3d 1134, 1141 (Colo. 2008) (stating that unjust enrichment "does not depend on any contract, oral or written"). Mr. Davis's remaining claims – windup, accounting, dissociation, and receivership – all depend on the existence of a partnership. *See* Colo. Rev. Stat. § 7-60-101 *et seq.* (Colorado Uniform Partnership Act). The jury found that there was no partnership. Docket No. 309 at 2. Thus, accepting the jury's finding

on the issue of partnership forecloses Mr. Davis's relief for his equitable claims that stem from the existence a partnership between Mr. Davis, Cypress, and Mr. Zuccarello.

As a result, the Court will dismiss Mr. Davis's equitable claims.

## III. CONCLUSION

Wherefore, it is

**ORDERED** that the Court enters the following declaratory judgment:

Dean Zuccarello and Kent Davis are free to contact and compete for clients previously serviced by Kent Davis and Dean Zuccarello through the Cypress Group and Cypress Advisors.  It is further

**ORDERED** that the other requests for declaratory judgment made by any party are **DENIED**.  It is further

**ORDERED** that Mr. Davis's equitable claims are **DISMISSED** with prejudice.  It is further

**ORDERED** that this case is closed.


DATED May 4, 2021.


BY THE COURT:


PHILIP A. BRIMMER
Chief United States District Judge