**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 16-cv-01935-PAB-MEH
      (Consolidated with Civil Action No. 17-cv-01219-PAB-MEH)

---

Civil Action No. 16-cv-01935-PAB-MEH

CYPRESS ADVISORS, INC.,

      Plaintiff/Counter Defendant,

v.

KENT MCCARTY DAVIS,

      Defendant/Counter Claimant/Third-Party Plaintiff,

v.

DEAN ZUCCARELLO,

      Third-Party Defendant.

---

Civil Action No. 17-cv-01219-PAB-MEH

CYPRESS ADVISORS, INC.*,*

      Plaintiff,

v.

KENT MCCARTY DAVIS and
C SQUARED ADVISORS, LLC,

      Defendants.

---

**ORDER**

---

This matter is before the Court on Davis's Renewed Rule 50(b) Motion for Judgment as a Matter of Law Regarding Claim for Civil Theft [Docket No. 315] and Cypress Advisors, Inc.'s and Dean B. Zuccarello's Motion for Attorneys' Fees and Costs [Docket No. 317].

## I. BACKGROUND

On July 29, 2016, Cypress Advisors, Inc. ("Cypress") filed this action against Kent McCarty Davis.  Docket No. 1.  Mr. Davis subsequently filed a claim against third-party defendant Dean Zuccarello. [1]  Docket No. 60.  On May 17, 2017, Cypress filed a separate action against Mr. Davis, Jim Christopherson,[2] and C Squared Advisors[3].  No 17-cv-01219-PAB-MEH, Docket No. 1.  On September 3, 2019, the two actions were consolidated because they shared "common question of fact and law" and "ar[o]se from a common nucleus of fact—namely, the actions Davis took around the time he left Cypress."  Docket No. 201 at 2 (quotations omitted).  After trial in February 2020, the jury found in favor of Cypress on its claim of civil theft against Mr. Davis.  Docket No. 309 at 2.  The jury was presented with evidence on the civil theft claim showing that in June 2016 ZAK LLC, a client of Cypress, *see* Tr., Day 5, 710:22-711:3; Docket No. 322 at 2, mailed a check (the "ZAK Check") to Mr. Davis that was made payable to Cypress. Tr., Day 5, 712:8-12.  Mr. Davis deposited the check, endorsing it with his own name on behalf of Cypress.  *Id.* at 712:14-22.  At the time, Mr. Davis accepted the check, Mr. Zuccarello testified that Mr. Davis was still an independent contractor for Cypress.  *Id.* at 712:10-12.  At the close of Cypress's case, Mr. Davis moved for judgment as a matter

---

[1] Mr. Zuccarello owns Cypress.  Docket No. 241 at 2.

[2] All claims were dismissed against Mr. Christopherson on January 8, 2019. 17-cv-01219-PAB-MEH, Docket No. 84

[3] C Squared Advisors is Mr. Davis's company.  Docket No. 241 at 2.

of law on Cypress's claim of civil theft pursuant to Fed. R. Civ. P. 50(a).  Tr., Rule 50, 2:22-3:10.  The Court denied the motion.  *Id.*, 29:19-20.  Mr. Davis renewed his motion after the close of evidence, asserting that Cypress never owned the ZAK Check.  *Id.*, 49:23-51:3.  The Court also denied that motion.  *Id.*, 52:10-14.

Final judgment was entered in this action on May 7, 2021.  Docket No. 312. Judgment was entered in favor of Cypress on its claim of misappropriation of trade secrets against Mr. Davis, based on Mr. Davis's retention of client information, with an award of $499,327 in damages and on its claim of civil theft against Mr. Davis with an award of $200 in statutory damages.  *Id.* at 2.  Judgment was entered in favor of Mr. Davis on his claim for breach of contract against Cypress with an award of $280,987 in damages.  *Id.*  Mr. Davis now renews his motion for judgment as a matter of law on Cypress's claim of civil theft pursuant to Fed. R. Civ. P. 50(b).  Docket No. 315 at 2.

## II.  RENEWED RULE 50 MOTION

### A.  <u>Legal Standard</u>

Federal Rule of Civil Procedure 50 provides that judgment as a matter of law is appropriate where "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue."  Fed. R. Civ. P. 50(a)(1).  "[I]n entertaining a motion for judgment as a matter of law, the court should review all of the evidence in the record." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).  Although courts are to review all of the evidence, there are limits as to what evidence they can consider. For example, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence."  *Id.*

Moreover, the Court "must disregard all evidence favorable to the moving party that the jury is not required to believe." *Id.* at 151.  In other words, "the court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that the evidence comes from disinterested witnesses." *Id.* (internal quotation and citation omitted)

Where a party properly moves for judgment as a matter of law prior to the case being submitted to the jury, that party may renew the motion after the jury returns its verdict.  *See* Fed. R. Civ. P. 50(a)(2), (b).  However, the Court should grant such relief "only where the proof is all one way or so overwhelmingly preponderant in favor of the movant so as to permit no other rational conclusion."  *Hinds v. Gen. Motors Corp.*, 988 F.2d 1039, 1045 (10th Cir. 1993).  The Court applies the same legal standard for a renewed motion under Rule 50(b) as is applied to the original motion for judgment as a matter of law under Rule 50(a).  *See, e.g., Hysten v. Burlington N. Santa Fe Ry. Co.*, 530 F.3d 1260, 1269-70 (10th Cir. 2008).  However, there is an added limitation in that generally "[t]he renewed motion under Rule 50(b) cannot assert grounds for relief not asserted in the original motion."  *Marshall v. Columbia Lea Reg'l Hosp.*, 474 F.3d 733, 739-40 (10th Cir. 2007).  In diversity cases, federal law governs whether judgment as a matter of law or a new trial is appropriate, but "the substantive law of the forum state governs analysis of the underlying claim."  *Valley View Angus Ranch, Inc. v. Duke Energy Field Servs., LP*, 2010 WL 4923979 at *4 (10th Cir. Dec. 6, 2010) (citations omitted).

### B. Analysis

Mr. Davis asserts that Cypress did not have standing to assert a claim for civil theft and so the Court should enter judgment as a matter of law on that claim.  Docket No. 315 at 2.  Mr. Davis argues that Cypress never possessed the ZAK Check and so it cannot establish ownership, a necessary element of civil theft.  *Id.* at 5.  Cypress argues that evidence at trial demonstrated that it did have ownership of the ZAK Check.  Docket No. 322 at 9.  The parties agree that the elements necessary to prove civil theft at trial were properly presented to the jury as:

> 1. Cypress owned the ZAK check;
>
> 2. Mr. Davis knowingly and without authorization exercised control over the ZAK check; and
>
> 3. Mr. Davis did so with the intent to permanently deprive Cypress of the use or benefit of Cypress's ZAK check.

Docket No. 315 at 6 (citing Docket No. 307 at 17); Docket No. 322 at 9.  The parties disagree, however, as to whether the evidence at trial was sufficient to show that Cypress owned the check.  Docket No. 315 at 5; Docket No. 322 at 9.  Mr. Davis asserts that, under Colo. Rev. Stat. § 4-3-420, if a payee does not receive delivery of the check, it cannot bring a claim for conversion of that check because it does not have an interest in it.  Docket No. 315 at 7.  Mr. Davis also asserts that he was not an agent of Cypress at the time that he accepted the check.  Docket No. 329 at 4.

Cypress argues that evidence was introduced at trial to show that Mr. Davis was a contractor for Cypress at the time he accepted the check.  Docket No. 322 at 13.  Additionally, Cypress claims that evidence showed that Mr. Davis signed the check with

his name and on behalf of Cypress.  *Id.*   Mr. Davis does not argue that an agent of Cypress accepting a check does not sufficiently establish possession by Cypress.

The Colorado Supreme Court has ruled that a check made out to an employer is the property of the employer when an employee receives the check on behalf of the employer as part of his job.  *See Hucal v. People*, 493 P.2d 23, 26 (Colo. 1971).  Here, evidence was introduced at trial that Mr. Davis signed for the check on behalf of Cypress and was an independent contractor of Cypress.  Tr., Day 5, 712:8-23; *see* Tr., Day 5, 661:13.  Mr. Davis compares this case to a situation where an unrelated third party steals a check, *see* Docket No. 315 at 8, but in this case, evidence was presented that Mr. Davis was accepting the check on behalf of Cypress.  Tr., Day 5, 712:14-23.

Mr. Davis relies on *Newport Steel Corp. v. Thompson*, 757 F. Supp. 1152, 1156 (D. Colo. 1990) (applying Colorado law), for the proposition that a check is not owned by a person who is not in possession of the check.  *See* Docket No. 315 at 8.  *Newport Steel* is distinguishable because there a party other than the payee designated on the check was attempting to assert ownership over the check.  *See Newport Steel*, 757 F. Supp. at 1154. [4]  In this case, evidence was introduced that the check was made out to Cypress.  Tr., Day 5, 712:8-11; 712:19-20.  The Court finds that a rational jury could have found that Mr. Davis accepted the check as an agent of Cypress's.  Therefore, a rational jury could have found that the check was the property of Cypress.  The Court will deny Mr. Davis's Rule 50 motion.

_____

[4] Mr. Davis cites cases from other states for the proposition that possession is required for ownership, *see* Docket No. 315 at 8-9, but Mr. Davis's assumption that he was not acting as an agent for Cypress is not an undisputed fact.

### III.  ATTORNEYS' FEES[5]

The Cypress parties request attorneys' fees and costs from the Davis parties on their civil theft and trade secrets claims.  Docket No. 317 at 2-3.  The Davis parties oppose an award of attorneys' fees on the civil theft claim because they assert that Mr. Davis is entitled to judgment as a matter of law and because the nominal damages Cypress was awarded on the civil theft claim do not support an award of attorneys' fees. Docket No. 332 at 2.  The Davis parties oppose a grant of attorneys' fees on Cypress's trade secrets claim, arguing that the Cypress parties waived their right to recover fees given that the jury did not find willful and malicious misappropriation and because the evidence in the case does not support a finding of willful misappropriation.  *Id*. Additionally, the Davis parties argue that, if attorneys' fees are awarded, they should be reduced because they are not proportionate to the award of damages.  *Id*. at 11. Finally, the Davis parties argue the Cypress parties' request for costs should be denied because final judgment did not award costs to a specific party and because both parties were partially successful.  *Id*. at 14-18.

In order to be awarded attorneys fees under the Local Rules a party must provide a motion "supported by affidavit" and the motion must include for each person for whom fees are claimed "a summary of relevant qualifications and experience" as well as "a detailed description of the services rendered, the amount of time spent, the hourly rate charged, and the total amount claimed."  D.C.COLO.LCivR 54.3(a)-(b).  The Cypress parties included an affidavit supporting their motion for both firms they retained.  Docket

---

[5] Mr. Zuccarello joins Cypress's motion, Docket No. 317 at 1, and both Mr. Zuccarello and Cypress will be referred to as the "Cypress parties".  The Cypress parties request fees and costs from Mr. Davis and his company C Squared Advisors, *id.*, who will be referred to jointly as the "Davis parties".

No. 317-1; Docket No. 317-7.  The Cypress parties also included the relevant

experience of the attorneys who billed time from each firm, Docket Nos. 317-5, 317-16,

and detailed descriptions of the time spent by each firm.  Docket Nos. 317-2, 317-15.

The Court finds that the Cypress parties properly moved for attorneys' fees under the

Local Rules.

### A.  Attorneys' Fees

#### 1.  Legal Standard

Federal courts sitting in diversity apply relevant state statutes on attorneys' fees.

*See Johnson v. Life Invs. Ins. Co. of Am.*, 216 F.3d 1087, *6 (10th Cir. 2000) (table).  A

determination whether to award attorneys' fees necessarily begins with the American

Rule, which precludes an award of attorneys' fees absent a specific contractual,

statutory, or procedural rule providing otherwise.  *City of Aurora ex rel. Util. Enter. v.*

*Colorado State Eng'r*, 105 P.3d 595, 618 (Colo. 2005) (citing *Alyeska Pipeline Serv. Co.*

*v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975)); *see also Buder v. Sartore*, 774 P.2d

1383, 1390 (Colo. 1989).  An award of attorneys' fees is an important sanction against

an attorney or party who improperly instigates or prolongs litigation.  *In re Marriage of*

*Aldrich*, 945 P.2d 1370, 1378 (Colo. 1997).  "The attorney fees statute is designed to

prevent burdensome litigation that interferes with the effective administration of justice."

*City of Aurora*, 105 P.3d at 618.  The law, however, is not designed to "discourage

counsel from zealously representing a client, but rather to balance that duty against the

important policy of discouraging unnecessary litigation."  *Id.* (citing *W. United Realty,*

*Inc. v. Isaacs*, 679 P.2d 1063, 1069 (Colo. 1984)).

### 2. Civil Theft

Under Colorado law, "an award of attorney fees to a prevailing plaintiff on a civil theft claim is mandatory." *Steward Software Co. v. Kopcho*, 275 P.3d 702, 712 (Colo. App. 2010), *rev'd on other grounds*, 266 P.3d 1085 (Colo. 2011). An award of fees is meant to serve a primarily punitive purpose for civil theft cases. *Id.* at 713. As discussed above in Section II.B., the Court declines to award Mr. Davis judgment as a matter of law on the civil theft claim and so that argument cannot be a basis to deny an award of attorneys' fees to the Cypress parties. The Davis parties also assert that the Court should decline to award damages on this claim because the damages are nominal. *See* Docket No. 332 at 4-5. As a successful plaintiff, the Cypress parties may recover "reasonable attorney fees" under Colorado statute. Colo. Rev. Stat. § 18-4-405.

### 3. Trade Secrets

If "willful and malicious misappropriation exists" in a trade secret claim, "the court may award reasonable attorney fees to the prevailing party." Colo. Rev. Stat. § 7-74-105. The Cypress parties argue that the evidence presented at trial shows that Mr. Davis maliciously and willfully misappropriated Cypress's trade secrets. Docket No. 317 at 8-12. In order to be liable for misappropriation of trade secrets a plaintiff must show "that the defendant knew, or should have known, that the trade secret was acquired by improper means." *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 9 F.3d 823, 847 (10th Cir. 1993). The jury found that Mr. Davis was liable for misappropriation of trade secrets, Docket No. 309 at 2, meaning that they found that Cypress proved Mr. Davis knew or should have known the trade secret was taken by improper means. The Davis parties argue Cypress cannot prove willful or malicious appropriation for two

reasons: first, because the jury did not find that Mr. Davis's conduct was willful, and second, because Mr. Davis acted with a good faith belief in his ownership of the contact database and prospect lists that were the subject of this claim.  Docket No. 332 at 5-11.

First, the Davis parties assert that willfulness was a question for the jury that the Court may not decide.  *Id.* at 6.  Rule 49 of the Federal Rules of Civil Procedure states that "[a] party waives the right to a jury trial on any issue of fact raised by the pleadings or evidence but not submitted to the jury unless, before the jury retires, the party demands its submission to the jury.  If the party does not demand submission, the court may make a finding on the issue."  Fed. R. Civ. P. 49(a)(3).  If a party does not present an issue to the jury, it "will be held to have waived its right to trial by jury on that issue" for the "purpose of giving the judge an opportunity to correct any inadvertent failure to submit the issue to the jury."  9B Charles Alan Wright et al., Fed. Prac. & Proc. Civ. § 2507, Special Verdicts, Omitted Issues (3d ed. April 2021).  On appeal, a court will presume "the lower court made whatever finding was necessary in order to support the verdict and judgment that was entered."  *Id.*

The issue of willfulness was raised in the pleadings in this case, *see* Docket No. 28 at 17, ¶ 86, but was not submitted to the jury.  *See* Docket No. 309 at 2.  Mr. Davis cites cases stating that a court cannot contradict a finding of willfulness by the jury, *see, e.g., Pearl Invs., LLC v. Standard I/O, Inc.*, 297 F. Supp. 2d 335, 339 (D. Me. 2004), but points to no cases stating that a court may not make a finding under Rule 49(a)(3) on willfulness when that issue was not presented to the jury.  *See* Docket No. 332 at 6-7. The Court finds that the issue of Mr. Davis's willfulness was not submitted to the jury

under Rule 49(a)(3) and also finds that it is appropriate for the Court to make such findings.

Second, the Davis parties argue that Mr. Davis had a good faith belief that he owned information he developed that was the subject of the trade secrets claim and that a good faith belief in ownership is inconsistent with a finding of willful and malicious appropriation. *Id.* at 9. Mr. Davis cites a case finding that trade secrets were not willfully or maliciously appropriated where the defendant believed he could retain information he developed. *Id*. at 8-9 (citing *Express Servs., Inc. v. Averette*, 2007 WL 9710850, at *5 (W.D. Okla. Sept. 28, 2007). However, in that case, there is no indication the defendant was told that he was at risk of violating trade secret laws for retaining information. *See Express Servs., Inc.*, 2007 WL 9710850, at *1-2.

Mr. Davis began working on his new company before leaving Cypress by setting up a website to advertise his company to the restaurant industry. Tr., Day 2, 106:11-107:4. Mr. Davis used prospect lists from Cypress to form prospect lists for his new company before he left Cypress. Tr., Day 5, 683:19-684:17; *see* Ex. 49. Mr. Davis distributed contact lists from Cypress to his partner at C Squared, Mr. Christopherson, before leaving the company. Tr., Day 5, 690:15-692:20, 693:1-20; *see* Exs. 107, 51, 52. Mr. Davis was warned upon his termination from Cypress, in writing, that he would be liable for misappropriation, undercutting his assertion that he had a good faith belief he was the rightful owner of the information. Tr., Day 2, 59:12-19, 71:2-13; *see* Ex. 79-3. Mr. Davis announced the launch of his new company to a variety of contacts including contacts from the Cypress Database. Tr., Day 2, 95:9-12. After leaving Cypress, Mr. Davis testified that he used prospect lists and contact databases from Cypress, Tr., Day

4, 411:9-13; Tr., Day 2, 7:3-6, 60:4-7, and evidence was presented showing he used and distributed Cypress's prospect lists over email to Mr. Christopherson.  Tr., Day 5, 684:14-686:4, 686:5-25, 687:1-688:7, 688:13-689:10, 689:15-690:7; *see* Exs. 73, 74, 91, 107, 111.  Mr. Davis testified that he used information from Cypress for his new entity, C Squared.  Tr., Day 2, 60:2-7.

The Tenth Circuit has looked for evidence of an "element of meaningful control and deliberate action" to demonstrate willful acts.  *Weibler v. Universal Technologies, Inc.*, 29 F. App'x 551, 554 (10th Cir. 2002).  Mr. Davis was warned not to retain information, but nevertheless disregarded that warning for the purpose of benefiting C Squared.  Evidence presented at trial showed that Mr. Davis knew he was retaining information from Cypress and using it at his new company C Squared.  His retention and distribution of contacts and prospects lists shows meaningful control.  He did not just passively keep information, he distributed it.  His actions demonstrate deliberation as Mr. Davis actively used the information from Cypress for the benefit of his new company.  Based on the evidence presented at trial, the Court finds Mr. Davis did not have a good faith belief in his ownership of the information and further finds that Mr. Davis willfully and maliciously misappropriated trade secrets.

### 4.  Reasonableness

To determine the reasonableness of a fee request, a court must begin by calculating the "lodestar amount."  *Robinson v. City of Edmond,* 160 F.3d 1275, 1281 (10th Cir. 1998).  The lodestar amount is the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  *See Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983).  A party seeking an award of attorneys' fees must establish the

reasonableness of each dollar and each hour for which the party seeks an award.  *Jane L. v. Bangerter,* 61 F.3d 1505, 1510 (10th Cir. 1995).  "A district court is justified in reducing the reasonable number of hours if the attorney's time records are 'sloppy and imprecise' and fail to document adequately how he or she utilized large blocks of time." *Case v. Unified Sch. Dist. No. 233, Johnson Cty., Kan.*, 157 F.3d 1243, 1250 (10th Cir. 1998) (quoting *Bangerter*, 61 F.3d at 1510).  A "reasonable rate" is defined as the prevailing market rate in the relevant community for an attorney of similar experience.  *Guides, Ltd. v. Yarmouth Group Prop. Mgmt., Inc.,* 295 F.3d 1065, 1078 (10th Cir. 2002).  A district court must consider the market evidence in front of it to set a reasonable rate and may lower or raise an attorney's rate "if the market so dictates." *Case*, 157 F.3d at 1257.

The Cypress parties assert that they retained two firms, Faegre, Drinker, Biddle, & Reath LLP ("Faegre") and Sherman & Howard LLC ("Sherman & Howard").  Docket No. 317 at 13; *see* Docket No. 317-1 at 3, ¶ 4; Docket No. 317-7 at 3, ¶ 2.  Faegre billed the Cypress parties a total of 5,416.4 hours at rates, for attorneys, of up to $665 an hour, *see* Docket No. 317-2 at 111, for a total of $2,101,345.14.  Docket No. 317 at 13.  The Cypress parties seek to recover $1,500,000 of this total.  *Id.* at 14.  Sherman & Howard billed the Cypress parties 503.3 hours at rates ranging from $210 per hour to $680 per hour, for the work done by attorneys and paralegals, *see* Docket No. 317-7 at 3, 4, ¶¶ 3, 5, for a total of $276,080.41.  Docket No. 317 at 13.  The Cypress parties seek to recover the entire amount billed by Sherman & Howard.  *Id.* at 14.  The Davis parties request a hearing on the reasonableness of the fees, including on the "numerous[,] duplicative, unnecessary, and/or unspecific time entries," but fail to point to

any specific entries that are unreasonable.  Docket No. 332 at 14.  The Davis parties

also do not contest the hourly rates set by either firm.  *See id.* at 11-14.  As the Davis

parties do not identify specific fees that are unnecessary and make only general

arguments without pointing to additional evidence that could be presented at a hearing,

the Court does not find that a hearing is necessary.  *See Gamble, Simmons & Co. v.*

*Kerr-McGee Corp.*, 175 F.3d 762, 774 (10th Cir. 1999) (ruling a district court need not

hold a hearing on attorneys' fees when "it has sufficient knowledge to make a decision

without a hearing").  The Cypress parties assert that the fees are reasonable and

commensurate with local standards.  Docket No. 317 at 8.

The Cypress parties argue that the amount Faegre charged was reasonable.  In

support, they provide an affidavit from Mr. Zuccarello, Docket No. 317-1, a detailed

summary of the hours billed by Faegre, Docket No. 317-2, biographies for the attorneys

who billed time, Docket No. 317-5, and The Colorado Bar Association's Economics of

Law Practice Survey, 2017 Edition (the "Practice Survey").  Docket No. 317-6.

In review of the hours provided, the Court finds that the time expended was

reasonable.  In "cases with voluminous fee applications . . . it is unrealistic to expect a

trial judge to evaluate and rule on every entry in an application."  *Am. Water Dev. Inc. v.*

*City of Alamosa,* 874 P.2d 352, 387 (Colo. 1994); *see also DeGrado v. Jefferson Pilot*

*Financial Ins. Co.*, 02-cv-01533-WYD-BNB, 2009 WL 1973501, at *10 (D. Colo. July 6,

2009).  The Court will not make a finding on each entry submitted in the record of over

100 pages of bills, for the years of litigation in this case.  The Court finds that "billing

judgment" was exercised to limit the billed fees, *see Case*, 157 F.3d at 1250, and

discounts were applied to the overall charge.  *See* Docket No. 317-2 at 2.  The time

entries are for a few hours at a time and state what was worked on with specificity.  *See id.* at 3-137.  The Court finds that the hours Faegre claims are appropriate for a case of this length and complexity.

In determining a reasonable rate, the Court is left with less guidance.  The Cypress parties included the required information for a motion for attorneys' fees under the local rules, *see* D.C.COLO.LCivR 54.3, but do not explain how the information they provide supports the finding that the charged rates are reasonable.  The attorney biographies do not specifically state the amount of time the attorneys have practiced, *see* Docket No. 317-5, whereas the Practice Survey provides market rates for attorneys based on the number of years they have been practicing.  *See* Docket No. 317-6 at 38.  The Cypress parties do not provide an explanation as to how the average billable rates in the Practice Survey should be compared to any specific Faegre attorneys in their motion and supporting affidavit, and they do not provide any explanation of rates for years outside of what is covered in the Practice Survey.  *See* Docket No. 317 at 8; Docket No. 317-1 at 2.  In 2017, partners at Faegre billed the Cypress parties at an average of $511 per hour.  See 317-2 at 2.  The rate for each partner that worked on the case is not provided individually.  *See id.*  The Practice Survey provides that, for 2016, the mean billing rate for lawyers with 40+ years of experience was $324 per hour and the median billing rate was $300 per hour.  Docket No. 317-6 at 38.  For all "business-commercial litigation" lawyers, the median billing rate was $295 and the billing rate for lawyers in the 75th percentile was $473.  *Id.* at 39.  The Cypress parties do not provide any evidence that the rates they provide are reasonable despite exceeding the average rates in Colorado.  *See* Docket No. 317 at 7-8.  A movant has

the burden to demonstrate that fees are reasonable.  *See Guides Ltd.*, 295 F.3d at 1079.  Here, the Cypress parties have not demonstrated that the rates charged by Faegre are reasonable.  An assertion that the exhibits "support the award of attorneys' fees" with no analysis is insufficient.  Docket No. 317 at 7.  The Cypress parties request fees at an average rate of $387 for work done by partners, associates, of counsel, paralegals, and employees providing client tech services.  *See* Docket No 317-2 at 2.  Finding no other proposed rate from Cypress or Davis, the Court will consider the Practice Survey as evidence of the market rates, *see Case*, 157 F.3d at 1256, and lower the billable rate to the average billable rate for lawyers across Colorado in 2016, namely, $254.  Docket No. 317-6 at 37.  Based on a total of 4,819.4 hours of work done by attorneys, *see* Docket No. 317-2 at 2, multiplied by a billable hourly rate of $254 amounts to $1,224,127.60.  For the work done by paralegals and staff doing client tech services at Faegre, Cypress has not provided a reasonable rate.  *See* Docket No. 317-1.  The Court will use the average billable rate for paralegals with the median amount of experience of polled paralegals in the survey, namely, $118.  *See* Docket No. 317-6 at 43.  Thus, 545.8 hours, Docket No. 317-2 at 2, multiplied by $118 amounts to $64,404.40.[6]  The Court finds that a total of $1,288,532 is a reasonable award of fees for the work of Faegre.

For the hours spent by Sherman & Howard, the Cypress parties provide billing records that provide the hourly rate for each person who worked on the case, Docket No. 317-15 at 2, as well as detailed time entries.  *See id.* at 4-26.  Sherman & Howard

---

[6] No reasonable rate has been provided for the hours labeled as Client Tech Services and no reason has been given explaining why these fees are reasonable, and so the Court will not award fees for the 51.2 hours of Client Tech Services.  *See* Docket No. 317-2 at 2.

spent a total of 503.3 hours on this case.  *Id.* at 2.  The Court finds this amount of hours to be reasonable and that the entries reflect billing judgment in deciding what to charge the client for.

     To demonstrate that the requested rate for Sherman & Howard is reasonable, the Cypress parties provide an affidavit from Peter G. Koclanes, an attorney at Sherman & Howard, to explain the reasonableness of the fees.  Docket No. 317-7 at 3, ¶¶ 1-2.  Mr. Koclanes states that the time Sherman & Howard expended was "reasonable and necessary" to represent Cypress.  *Id.* at 3-4, ¶ 4.  Additionally, he states that the billable rates of $680 per hour for himself, $235 an hour for one paralegal, and $210 an hour for another paralegal "are within the market norm in the legal community."  *Id.* at 4, ¶ 5. The biographies of Mr. Koclanes and Ms. Robarge, a paralegal who worked on this action, are included in Cypress's motion.  Docket No. 317-16.  A detailed description of the hours Sherman & Howard spent on this action is included.  Docket No. 317-15.  To prove that a fee rate is reasonable and within the market norm a "claimant must: 'produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'" *Guides, Ltd*, 295 F.3d at 1078 (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n. 11 (1984)).  Here, no evidence beyond Mr. Koclanes's affidavit is provided to justify Sherman & Howard's rates.  "Where a district court does not have before it adequate evidence of prevailing market rates, the court may use other relevant factors, including its own knowledge, to establish the rate."  *Id.* at 1079.  Here, the Court will also use the Practice Survey to set a reasonable rate for Sherman & Howard.  Sherman & Howard billed 346.8 hours for

Peter Koclanes.  Docket No. 317-15 at 2.  Mr. Koclanes has over thirty years of experience.  Docket No. 317-16 at 2.  The average rate for lawyers with 30-39 years of experience in 2016 was $292 per hour.  Docket No. 317-6 at 38.  346.8 hours at $292 per hour provides a total of $101,265.60.  Ms. Robarge, a paralegal with over twenty years of experience, Docket No. 317-16 at 8, billed 151.9 hours.  Docket No. 317-15 at 2.  The average rate for paralegal with 20+ years of experience in 2016 was $126. Docket No. 317-6 at 43.  151.9 hours at $126 per hour provides a total of $19,139.40. Ms. Zoller is a paralegal who billed 4.6 hours.  Docket No. 317-15 at 2.  Ms. Zoller's relevant experience was not provided, so the Court will use the average rate for paralegals with the median experience level, $118 per hour.  *See* Docket No. 317-6 at 43.  4.6 hours at $118 per hour provides a total of $542.80.  Accordingly, the Cypress parties will be awarded a total of $120,947.80 for the work done by Sherman & Howard and a total of $1,409,479.80 in attorneys' fees for the work of both firms.

### 5.  Reductions

The Davis parties argue that the Cypress parties' request should be reduced because they achieved minimal success at trial and prevailed on only two claims out of fifteen between the two lawsuits.  Docket No. 332 at 11.  The Cypress parties respond that the prevailing party in an action is not determined by counting claims and that, in the nine claims and counterclaims presented to the jury, Cypress prevailed on all three claims it originally brought.  Docket No. 345 at 2.

Reducing fees in proportion to the number of claims a party was successful on is not the appropriate analysis.  *See Jane L. v. Bangerter*, 61 F.3d 1505, 1511 (10th Cir. 1995).  "Where a plaintiff has obtained excellent results, his attorney should recover a

fully compensatory fee. . . .  In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit."  *Hensley v. Eckhart*, 461 U.S. 424, 435 (1983).  A court must "make a qualitative assessment to determine what less-than-perfect results are 'excellent,' justifying full recovery, or to what extent plaintiffs' 'limited success' should effect a reduction in the lodestar.  'There is no precise rule or formula' for making such determinations."  *Bangerter*, 61 F.3d at 1511 (quoting *Hensley* 461 U.S. at 436).

Although the Cypress parties did not prevail on every legal theory, judgment in favor of the Cypress parties as to their civil theft and misappropriation of trade secrets claims, Docket No. 312 at 2, is sufficient to demonstrate that Cypress was the prevailing party.  Dismissal of some claims does not prevent this finding.  Cypress prevailed on its claims of civil theft and misappropriation of trade secrets against Mr. Davis and C Squared.  Docket No. 309 at 2.  Mr. Davis prevailed on his claim of breach of contract against Cypress, but did not prevail on his claim of interference with prospective business relations against Cypress or his claim for breach of contract against Mr. Zuccarello.  *Id.* at 6.  Thus at trial, the Cypress parties prevailed on all of their claims against Mr. Davis.  The Court will decline to reduce an award of attorneys' fees based on the proportion of claims on which the parties were successful.  The Court finds that Cypress's success on its claims at trial makes it the prevailing party with excellent results that entitles it to fees without reductions.

## B.  Costs

The Davis parties argue that the Cypress parties should not be awarded costs because they are not the prevailing party.  Generally, a litigant who is the prevailing

party for purposes of attorneys' fees is also the prevailing party for purposes of costs.

*Barber v. T.D. Williamson, Inc.*, 254 F.3d 1223, 1234 (10th Cir. 2001); *see also Hensley*,

461 U.S. at 433 (1983).  Because the Court finds that the Cypress parties are the

prevailing parties for the purposes of attorneys' fees, it also finds they are the prevailing

parties for costs.  The Local Rules state that "the clerk shall tax costs in favor of a

prevailing party."  D.C.COLO.LCivR 54.1.  As the Cypress parties filed a bill of costs

within the time allotted by the Court, *see* Docket No. 314 and Docket No. 318, the clerk

shall award the Cypress parties costs.  The Court, however, agrees with the Davis

parties that Colorado law does not authorize the recovery of costs beyond the

categories provided in 28 U.S.C. § 1920.  *See Stender v. Archstone-Smith Operating*

*Trust*, 958 F.3d 938, 945 (D. Colo 2020).  The Cypress parties can only collect costs for

"(1) clerk and Marshal fees, (2) fees for 'recorded transcripts necessarily obtained for

use in the case,' (3) expenses for printing and witnesses, (4) expenses for

exemplification and necessary copies, (5) docket fees, and (6) compensation of

interpreters and court-appointed experts."  *Id.* at 941 (quoting 28 U.S.C. § 1920).

 To the extent the Davis parties argue they are also prevailing parties, the Court

declines to award them costs based on their failure to file a bill of costs as required by

D.C.COLO.LCivR 54.1.  The Court instructed the Davis parties to file a proposed bill of

costs by June 21, 2021 and they did not file one.  *See* Docket No. 314.

## IV. CONCLUSION

 Accordingly, it is

 **ORDERED** that Davis's Renewed Rule 50(b) Motion for Judgment as a Matter of

Law Regarding Claim for Civil Theft [Docket No. 315] is **DENIED**.  It is further

**ORDERED** that Cypress Advisors and Dean B. Zuccarello's Motion for Attorneys' Fees and Costs [Docket No. 317] is **GRANTED** in part and **DENIED** in part.  It is further

**ORDERED** that Cypress Advisors and Dean B. Zuccarello are **AWARDED** attorneys' fees in the amount of $120,947.80 for the work done by Sherman & Howard and $1,288,532 for the work done by Faegre for a total of $1,409,479.80.  It is further

**ORDERED** that Cypress Advisors and Dean B. Zuccarello be **AWARDED** their reasonable costs pursuant to 28 U.S.C. § 1920.


Dated: March 30, 2022

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge